Opinion by JUDGE WEBB
*524 ¶ 1 A jury convicted Rodel Miranda of sex offenses involving his girlfriend's eleven-year-old daughter, E.S., and her friend, V.M. On appeal, he primarily contends the trial court erred either in admitting a DVD recording of E.S.'s entire forensic interview, rather than only those portions that constituted prior consistent statements, or, if the entire interview was admissible, then in allowing the prosecution to introduce the recording after E.S. had testified and been released, which allegedly violated his confrontation rights.
¶ 2 We conclude that under common law evidentiary principles, the entire recording was admissible as a prior consistent statement, because Miranda broadly attacked the credibility of E.S. Addressing a constitutional question unresolved by the United States Supreme Court or the Colorado Supreme Court, we further conclude that the Confrontation Clause permits admission of testimonial hearsay after the declarant has testified and been released, provided that the declarant testified concerning matters addressed in the declaration, the declarant was subject to cross-examination, and the defendant did not ask that the prosecution be required to recall the declarant for further cross-examination after the hearsay had been introduced. We reject Miranda's remaining contentions and therefore affirm.
I. Introduction
¶ 3 According to the prosecution's evidence, Miranda sexually assaulted E.S. twice. First, she awoke to Miranda pulling down her pants and touching her vagina. Second, and a year or more later, Miranda was driving E.S. and V.M. back to V.M.'s house; he stopped the car in a dark alley and proposed playing "truth or dare." During the game, Miranda dared E.S. to touch his penis and to place it in her mouth. She did both. V.M. did not want to play the game. The testimony about whether Miranda specifically dared her to do anything and what she did was inconsistent.
¶ 4 Miranda testified in his defense and denied all of the allegations. He asserted that E.S. had fabricated the allegations because she did not like his relationship with her mother, and had enlisted her friend to help.
¶ 5 II. The Trial Court Did Not Err in Admitting the Recorded Interview of E.S.
¶ 6 Miranda first contends the trial court erred in admitting the recorded interview of E.S. under section 13-25-129, C.R.S.2013, and the common law doctrine of prior consistent statements. Alternatively, he contends admission of the interview violated his constitutional right to confront E.S. We discern no ground for reversal.
A. Admission of Entire Recorded Interview
¶ 7 At a pretrial hearing, the court asked whether the prosecutor intended to offer E.S.'s interview during trial. She said that she would do so. The court deferred ruling.
1. Background and Preservation
¶ 8 In opening statement, defense counsel said: "Members of the jury, you're here this morning because of the inventive story of a young adolescent girl.... She used her friends to corroborate her story but it doesn't match up because it didn't happen." Counsel described E.S. as "a troubled adolescent girl" who "didn't like her mom's new man."
¶ 9 At trial, E.S. testified about the circumstances of the alleged assaults and was cross-examined. During direct examination, the prosecutor impeached her using prior inconsistent statements made during her forensic interview, which had not yet been admitted.[1] E.S. testified that her memory of the events had been better during the interview and that she had told the truth.
¶ 10 After E.S. was released as a witness, the prosecution offered the recording of E.S.'s forensic interview into evidence through the investigating officer. Defense counsel objected. The court heard extensive argument outside the presence of the jury.
*525 ¶ 11 As to admission of the entire interview, defense counsel explained:
My concern here is that if this entire video is going to be introduced in to evidence it would essentially allow bolstering of all the statements that [E.S.] gave on the stand today that were not inconsistent with things on the video....
The same argument is made on appeal.
¶ 12 The prosecutor responded that the entire interview was admissible under People v. Eppens, 979 P.2d 14 (Colo.1999), and People v. Elie, 148 P.3d 359 (Colo. App. 2006). Specifically, she asserted that it could be used to rehabilitate E.S. as a witness whose credibility had been attacked in defense counsel's opening statement and cross-examination.[2]
¶ 13 The court agreed to review the recording overnight. The next day, it admitted the entire interview under both section 13-25-129 and the theory of prior consistent statements to rehabilitate E.S., "whose cred[ibility] has been impeached by the defense and also ... to provide consistency as to the story-the versions of events she has been impeached on here."
2. Standard of Review
¶ 14 "A trial court has substantial discretion in deciding questions concerning the admissibility of evidence." Eppens, 979 P.2d at 22. "Absent an abuse of this discretion, a trial court's evidentiary rulings will be affirmed." Elie, 148 P.3d at 362. A trial court abuses its discretion when its ruling on admissibility of evidence is "manifestly arbitrary, unreasonable, or unfair." People v. Salazar, 2012 CO 20, ¶ 39, 272 P.3d 1067.
3. Law
¶ 15 "[P]rior consistent statements may be used for rehabilitation when a witness's credibility has been attacked, as such statements are admissible outside CRE 801(d)(1)(B)." Eppens, 979 P.2d at 21. Determining "how much of a prior consistent statement is admissible is based upon its relevance and probative use." Elie, 148 P.3d at 362. This calculus turns on the scope of impeachment and the attack on the witness's credibility.
¶ 16 Where a witness's testimony is attacked solely based on "specific facts," "only prior consistent statements regarding those specific facts are relevant and admissible." Id. By contrast, where "the impeachment is general and not limited to specific facts ... the jury should have access to all the relevant facts, including consistent and inconsistent statements." Id. Such broader access "give[s] the jury a complete picture of [the witness's] credibility" and places the testimony in context. People v. Banks, 2012 COA 157, ¶ 39, 412 P.3d 417 (cert. granted on other grounds June 24, 2013); see also People v. Tyler, 745 P.2d 257, 259 (Colo.App.1987).
¶ 17 Deciding what constitutes general impeachment is vested in the trial court's discretion. See McLaughlin v. BNSF Ry. Co., 2012 COA 92, ¶ 14, 300 P.3d 925 (no abuse of discretion in admitting transcript of witness's interview where "counsel challenged [the witness's] testimony" and "more generally challenged his description of the incident and his injuries").
4. Application
¶ 18 Defense counsel did not limit opening statement or cross-examination of E.S. "to one specific statement," but made "a general attack on the victim's credibility." People v. Halstead, 881 P.2d 401, 403-04 (Colo.App.1994). In opening statement, as discussed above, Miranda attacked E. S.'s credibility and motivation. And in cross-examination, without using E.S.'s prior statements to impeach her, defense counsel generally attacked her credibility and motivation by questioning her about her mother's relationship with Miranda, whether she "like[d] going over to Rodel's house," if she "didn't really like him that much," her history of pulling out her own hair, the car ride with V.M., her experience playing truth or dare *526 with her friends, and incidents of E.S. having looked at Miranda's pornography.
¶ 19 These attacks make the division's analysis in Banks particularly instructive. There, "[d]efense counsel argued that the witnesses lied to protect themselves or to help with their other prosecutions, thereby questioning the overall truthfulness of the witnesses regarding all of their statements." Banks, ¶ 39. For this reason, the division concluded that the witnesses' entire "recorded statements could be used for rehabilitation," even though "each video has consistencies and inconsistencies with what the witnesses have said in court." Id. at ¶¶ 39, 42 (internal quotation marks omitted); see also Elie, 148 P.3d at 363 (Because defendant was "cross-examined regarding [the witness's] motive for testifying" and challenged "almost every aspect of his account of the crime," a division of this court concluded that defendant had generally placed the witness's credibility in question and the witness's prior consistent statements were admissible.).
¶ 20 Similarly here, because "the prior statements were relevant and admissible to give the jury a complete picture of [her] credibility," Banks, ¶ 39, the trial court acted well within its broad discretion in admitting the entire recorded interview.[3] Having so concluded, we need not address the interview's admissibility under section 13-25-129 or CRE 613(a).
B. Confrontation Clause
¶ 21 Miranda asserts that even if the entire recording was admissible to rehabilitate E.S., the trial court violated his confrontation rights by admitting it after E.S. had testified and been released.[4] We conclude that on the particular circumstances presented, a confrontation violation did not occur.
1. Background and Preservation
¶ 22 Below, in challenging admission of the recording on confrontation grounds, defense counsel argued:
I believe what the DA is talking about there about introducing that video so they could see her mannerisms and all of that, that would implicate Mr. Miranda's confrontation rights because while we did have the right to cross-examine the witness now when she was in court and have an affect [sic] on her demeanor now, we did not have a chance to do that while this interview was taking place at Safe Passage. And so for that reason we would strongly object if the DA is intending on using the video for that purpose on Crawford grounds.
(Emphasis added.)
¶ 23 But defense counsel did not assert either that admission of the recording would result in a confrontation violation because E.S. had testified and been released or that a Crawford error could be avoided only if admission of the recorded interview was conditioned on the prosecution recalling E.S. to allow for further cross-examination. And even after the court ruled the entire interview admissible, defense counsel did not ask that the prosecutor be ordered to recall E.S.
¶ 24 Thus, although defense counsel cited Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), below, Miranda's confrontation argument on appeal is new. As such, it will be reviewed only for plain error. People v. Rogers, 2012 COA 192, ¶ 24, 317 P.3d 1280 ("An issue is unpreserved for review when an objection or request was made to the trial court, but on different grounds than those raised on appeal."); see *527 People v. Miller, 113 P.3d 743, 749 (Colo.2005) (holding unpreserved "trial errors of constitutional magnitude" are subject to plain error analysis (internal quotation marks omitted)).
2. Standard of Review
¶ 25 The Attorney General concedes that because E.S.'s forensic interview was testimonial, it requires a confrontation clause analysis under Crawford. See People v. Sharp, 155 P.3d 577, 581 (Colo.App.2006) ("[A] child's videotaped statements to [a] private forensic interviewer [a]re the functional equivalent of police interrogation and [a]re testimonial.").
¶ 26 "We review de novo a defendant's contention that the trial court violated his or her Confrontation Clause rights." People v. Phillips, 2012 COA 176, ¶ 85, 315 P.3d 136. The consequences of a confrontation violation are reviewed for constitutional harmless error. Banks, ¶ 68. This analysis turns on "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Bernal v. People, 44 P.3d 184, 200-01 (Colo.2002) (internal quotation marks omitted).
¶ 27 Plain error occurs where an error is so "obvious and substantial" that it "undermined the fundamental fairness of the trial itself" and "cast serious doubt on the reliability of the judgment of conviction." Miller, 113 P.3d at 750 (internal quotation marks omitted).
3. Law
¶ 28 Under the Confrontation Clause, a nontestifying witness's testimonial, out-of-court statements are admissible only when "the witness is unavailable and the accused had an opportunity to cross-examine the witness when the statement was made." Sharp, 155 P.3d at 579-80. "[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).
4. Application
¶ 29 Under the particular facts of this case, we conclude that Miranda's confrontation rights were not violated, and thus the trial did not plainly err, for the following three reasons.[5]
¶ 30 First, this case differs from those on which Miranda relies, where the prosecution failed to produce the hearsay declarant during its case in chief, thus leaving the defendant to call the declarant during the defense case. See, e.g., id. at 324-25, 129 S.Ct. 2527. This dilemma raises a Confrontation Clause concern. See, e.g., Lowery v. Collins, 996 F.2d 770, 771 (5th Cir.1993). It may also implicate impermissible burden shifting. Cf. People v. Clark, 214 P.3d 531, 540 (Colo. App. 2009).
¶ 31 But here, during the prosecution's case-in-chief, E.S. testified at length about the nature of the assaults, was impeached with some of her statements from the forensic interview, adopted the statements that she had made during the interview, and affirmed that they were true.
¶ 32 Second, this case also differs from those in which, "[a]s a practical matter," because "a child is excused before her hearsay statements are proffered, the defense has no opportunity to cross-examine the child on those statements." Felix v. State, 109 Nev. 151, 849 P.2d 220, 247 (1993), superseded by rule on other grounds as stated in Evans v. State, 117 Nev. 609, 28 P.3d 498, 509 (2001). In that circumstance, later "admitting the child's hearsay puts the defendant in a constitutionally impermissible Catch-22 of calling the child for direct or waiving his confrontation *528 rights." State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697, 701 (1997) (internal quotation marks omitted); see also State v. Daniels, 210 Mont. 1, 682 P.2d 173, 178-79 (1984) (Because declarant excused without any questioning regarding out-of-court statements, declarant was "not subject to cross-examination concerning the statement" and the statement was therefore inadmissible.), superseded by statute on other grounds as stated in 362 Mont. 426, 265 P.3d 623 (2011).
¶ 33 Here, by contrast, because the interview arose during E. S.'s direct testimony, defense counsel could have cross-examined her about it. See CRE 611(b) ("Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.").
¶ 34 Instead, counsel limited cross-examination to the theory of defense-E.S.'s troubled relationship with Miranda. Still, where "the defendant, for tactical or other reasons, voluntarily limits or chooses to forego cross-examination" after the prosecution has produced the witness, his right to confrontation has been satisfied. Lowery, 996 F.2d at 772 ; see also State v. Pollock, 251 Or.App. 755,284 P.3d 1222, 1224 (2012) ("[W]here, as here, the victim has taken the witness stand and is available for cross-examination, the Confrontation Clause is not implicated.").[6]
¶ 35 Third, at the end of E.S.'s testimony, the prosecutor asked the trial court if she could "be released." Although the court had reserved ruling on admission of the forensic interview, defense counsel did not object, and the court released her. Later, after the court ruled that the recording of the interview could be admitted through another witness, defense counsel did not ask that the court order the prosecutor to recall her for further cross-examination.
¶ 36 By these acts and omissions, Miranda "chose not to recall the victim for cross-examination although he could have after the prosecutor played the DVD." Pollock, 284 P.3d at 1224 ; see also State v. Davis, 109 Conn.App. 187, 951 A.2d 31, 38 (2008) ("Although the victim was called to testify before the state introduced his challenged testimonial statements during its later direct examination ... the defendant could have attempted to recall the victim as a witness."). Thus, because the choice not to request that the prosecutor be ordered to recall E.S. was his own, it "did not impair his right to confront a witness against him." Pollock, 284 P.3d at 1224 ; cf. Cropper v. People, 251 P.3d 434, 438 (Colo.2011) (Where defendant's "attorney did not follow [ section 16-3-309(5), CR. S.2013 ] procedures," she made "a decision to waive defendant's right of confrontation regardless of whether the attorney knew of or understood the statute or its requirements.").
¶ 37 For these reasons, we conclude that the trial court did not commit a confrontation error.
¶ 38 But even if the court erred, under plain error Miranda could obtain relief only if the error was "so clear-cut, so obvious, a competent trial judge should be able to avoid it without benefit of objection." People v. Taylor, 159 P.3d 730, 738 (Colo.App.2006). For an error to satisfy this requirement, "the action challenged on appeal must contravene: (1) a clear statutory command; (2) a well-settled legal principle; or [ (3) ] Colorado case law." People v. Pollard, 2013 COA 31, ¶ 40, 307 P.3d 1124 (citations omitted).
¶ 39 Here, neither party has cited a Colorado case holding that where testimonial hearsay is offered after the declarant has been excused, the prosecution must recall the declarant to satisfy a defendant's confrontation rights. Nor have we found one. Few cases in other jurisdictions have touched on this issue; no case directly supports Miranda. And the question is not regulated by statute.[7]
*529 ¶ 40 Therefore, the court's admitting the recorded interview without requiring the prosecution to recall E.S., even if error, does not amount to plain error.
III. Other Evidentiary Issues Concerning E.S. Do Not Warrant Reversal
A. Evidence of Grooming
¶ 41 Miranda contends the trial court abused its discretion in admitting evidence that he had groomed E.S., because the evidence was not admissible as res gestae and he was not afforded the proper procedural safeguards under CRE 404(b). Because we conclude that the trial court acted within its discretion in admitting the evidence as res gestae, we do not address CRE 404(b).
1. Background and Preservation
¶ 42 Before trial, the prosecution moved to admit the following seven acts as res gestae evidence:
1. "[E.S.] said that [Miranda] would lie on the couch in his boxers with his penis exposed and would 'play with his junk' when [E.S.] could see it."
2. "She described one incident where she had a friend sleeping over and she was sleeping on the living room floor when she woke up to find [Miranda] trying to take her pants off. She got up and ran to her mother's room."
3. "[E.S.] stated that [Miranda] would stare at her a lot and that he was very 'creepy.' "
4. "She described another occasion when she was asleep and when she awoke [Miranda] was standing up, holding his private area and looking at the clock."
5. "[E.S.] described seeing [Miranda's] pornographic magazines. She stated that [Miranda] would cut out pictures of people having sex and leave them around the house. The victim's mother confirmed this. [E.S.] said that one of the magazines was titled 'Butt Man.' The victim's mother confirmed [Miranda] had a magazine called 'Butt Man.' "
6. "[E.S.] said she found some porn magazines in the house and demanded [Miranda] to give them to her to give to her mom. He gave them to her and said that if she needed anything, any examples, to let him know."
7. "[E.S.] stated that one time [Miranda] had taken her and her friend ... over to his mom's house and they played in the sprinklers. She said that [Miranda] sprayed them in their vaginal area with a hose while they were in their bathing suits, and that he would laugh about it."
¶ 43 The prosecutor argued that this evidence "helps illustrate for the jury the relationship between [Miranda] and the victim, and the ongoing sexualized grooming behavior of [Miranda] that played into, and set the stage for, the crimes charged against him." She explained that "[w]ithout this evidence, the jury will be left with truncated facts regarding the nature of [Miranda's] relationship with the victim, and will be left with the mistaken impression that the two instances charged as crimes occurred out of the blue."
¶ 44 Defense counsel responded, "[t]he People intend on offering evidence of prior bad acts that are not part and parcel or incidental to the offenses charged in this matter." This response encompasses the challenge to admitting this evidence as res gestae raised on appeal.
¶ 45 The court found that each act had taken place "within the range of the incidents," meaning "at least two to three years" around the two charged offenses concerning E.S. It reasoned that the acts were "sufficiently closely related in time and also nature and circumstances to the charged offenses to provide ... a better understanding of the context in which the crimes are charged." Thus, the evidence was necessary
*530 for the jury to understand that it doesn't just come out of the blue; that there is some logical incidents going on associated with the actual assaults, that the assaults as alleged just didn't mysteriously happen without any other indication from [E.S.'s] part; that there is and are other activities that would provide some context; that it's a highly sexualized relationship as initiated by the defendant, and second, that each of these incidents could be seen as grooming.
2. Standard of Review
¶ 46 Rulings regarding res gestae evidence are reviewed for an abuse of discretion. People v. Jimenez, 217 P.3d 841, 846 (Colo.App.2008). "The Colorado Rules of Evidence strongly favor the admission of material evidence, and a trial court has substantial discretion in deciding questions concerning admissibility of evidence." People v. Agado, 964 P.2d 565, 567 (Colo.App.1998) (citation omitted). An evidentiary ruling will not be reversed unless it is manifestly arbitrary, unreasonable, or unfair. Jimenez, 217 P.3d at 846.
3. Law
¶ 47 Res gestae evidence is "generally linked in time and circumstances with the charged crime, forms an integral and natural part of an account of a crime, or is necessary to complete the story of the crime for the jury." People v. Greenlee, 200 P.3d 363, 368 (Colo.2009) (internal quotation marks omitted). Such evidence "provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." People v. Lucas, 992 P.2d 619, 624 (Colo.App.1999).
¶ 48 For example, it may be "probative of defendant's intent." People v. Jaramillo, 183 P.3d 665, 668 (Colo.App.2008) ; see also People v. Martinez, 734 P.2d 650, 652 (Colo.App.1986) ("[T]he evidence was highly relevant to that defendant's motive and intent."). Although no Colorado case has announced a temporal limitation on res gestae evidence, the Attorney General has not cited, nor have we found, a case upholding admission of such evidence that-as here-was separated by a year or more from the charged offense. See People v. Fears, 962 P.2d 272, 280 (Colo.App.1997) (evidence of robbery committed nine months before murders admissible as res gestae evidence to give context to murders).
¶ 49 Cases involving similar time frames that reached different results suggest the explanatory value of the evidence has more significance than its temporal relationship to the charged offenses. Compare People v. Thomeczek, 284 P.3d 110, 114 (Colo.App.2011) (evidence of assault on same victim three months earlier was "necessary to a full understanding of why the victim and the defendant may have behaved as they did in the charged incident"), with People v. Rollins, 892 P.2d 866, 873 (Colo.1995) ("Evidence of dissimilar incidents spanning a three-month time frame cannot be characterized as res gestae evidence.").
¶ 50 "The procedural requirements of CRE 404(b) do not apply to res gestae evidence." Thomeczek, 284 P.3d at 114. Nor is a cautionary instruction required. People v. Rivers, 70 P.3d 531, 537 (Colo.App.2002). And while res gestae evidence is subject to CRE 403, "in assessing the admissibility of this evidence on appeal, we must assume the maximum probative value of the evidence ..., and the minimum prejudice reasonably to be expected." People v. Gladney, 250 P.3d 762, 768 (Colo.App.2010).
4. Application
¶ 51 Here, the record reveals that both the charged offenses and the grooming acts occurred over approximately the same two-year period. E.S. testified that she began staying with her mother at Miranda's apartment when she was "nine or ten"; the first assault took place when she was "either nine or ten"; and the second assault occurred when she was eleven. This testimony places the trial court's finding that the grooming acts were "sufficiently closely related in time" to the charged offenses beyond the temporal relationship in any Colorado case affirming admission of res gestae evidence.
*531 ¶ 52 But the court also concluded that the evidence was necessary to provide the jury with the full context in which the charged assaults had occurred, because the acts showed that the assaults were "not just out of the blue," but "could be seen as grooming" of E.S. Thus, evidence the court found showed "a highly sexualized relationship as initiated by the defendant" was probative of his intent. And this evidence "set a background for the events leading up to the victim's [sexual assault]." People v. Quintana, 882 P.2d 1366, 1379 (Colo.1994). Affording the evidence maximum probative value, it explains how Miranda ultimately led E.S. to acquiesce in sexual contact during the truth or dare game.
¶ 53 Cases from other jurisdictions also support the court's analysis. Grooming a victim for sexual exploitation can be probative of a defendant's efforts "to cultivate a relationship with the victim, [to] induce her submission to sexual demands and to procure her silence." State v. Coleman, 152 Idaho 872, 276 P.3d 744, 748 (App.2012). Particularly instructive is the grooming behavior at issue in State v. Truman, 150 Idaho 714,249 P.3d 1169 (App.2010).[8] There, like here, the defendant groomed his fourteen-year-old stepdaughter with "a clear pattern of repeated criminal and sexual conduct: rewards and punishment based on compliance with [his] sexual demands; sexualized comments and sexual acts occurring over the course of a year; and showing the victim pornography on multiple occasions." Coleman, 276 P.3d at 749 (describing the grooming in Truman, 249 P.3d at 1174 ). This evidence showed ongoing behavior to "remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse." Id. ; see also Chaparro v. State, 279 Ga.App. 145, 630 S.E.2d 645, 648 (2006) (trial court did not abuse its discretion in admitting acts of grooming the child for victimization as res gestae evidence).
¶ 54 The strong explanatory value of this evidence undercuts Miranda's argument that because the acts occurred over a two-year period, they were too remote in time to be considered part and parcel of the charged offenses. In addition, this case is unusual because it does not involve res gestae evidence that preceded or followed an offense. Rather, the two assaults bookend the period within which the grooming behavior occurred. This confluence of grooming behavior and charged assaults provided the jury with the context in which the assaults took place and explained why E.S. acquiesced in the more serious second assault.
¶ 55 For these reasons, the trial court acted within its "substantial discretion" in admitting the acts as res gestae evidence, Eppens, 979 P.2d at 22, although they were "somewhat remote in time," Fears, 962 P.2d at 280.
B. Past Recollection Recorded
¶ 56 Our conclusion that the grooming acts were admissible as res gestae evidence reduces this contention to four alleged trial court errors: allowing E.S. to testify regarding the list of her statements that her stepmother had written down; permitting the jury to briefly view this list during her testimony; allowing the stepmother to read the list; and possibly sending it to the jury during deliberations along with the prosecution's other exhibits. We discern no ground for reversal.
1. Background and Preservation
¶ 57 During E. S.'s direct examination, the prosecution presented her with People's Exhibit 38. She identified it as "a list that [her stepmother] wrote" based on "things that [E.S.] told her." Defense counsel objected to admitting the list, arguing hearsay and bolstering. The prosecution responded that it was a recorded recollection and that a proper foundation had been laid. The court overruled the objection and admitted the list as past recollection recorded.
¶ 58 The list was displayed on the screen and read as follows:
2. Mom sleeps all the time. Never gets out of bed.
*532 3. Nasty magazines.
4. Rodell [sic]-spread eagle on sofa in boxers
( [E.S.] saw his junk)
- Plays with junk in front of [E.S.]
- Stares at her all the time
- Over protective in a creepy way
5. 2009-[E.S.] was sleeping and she woke up to Rodell [sic] taking off her pants
[unreadable] the pulling out her hair started
She says he has made other attempts since then.
After the court overruled his hearsay objection, Miranda did not separately object to the prosecutor displaying the list during E.S.'s direct examination.
¶ 59 Following her testimony and with the jury excused, the court pointed out that under CRE 803(5)"the memorandum of record may be read into evidence but may not itself be received unless offered by an adverse party." It told the parties that the list could no longer be exhibited on the screen and if it was not further authenticated when the prosecution called the stepmother, "there may be cause for a curative instruction as to what [the jury] saw."
¶ 60 When the stepmother testified, she identified the list as her handwriting, and described it as "some notes about what [E.S.] had told [her]." She explained that "the notes [are] accurate as to what [E.S.] said to [her]" "as [she] was writing it down as [E.S.] was talking." After this testimony, the prosecutor attempted to admit the list into evidence, but defense counsel again objected on hearsay grounds. The court sustained the objection, but allowed the stepmother to read the entire list under CRE 803(5).
¶ 61 Defense counsel did not request a limiting instruction. Nor did he ever argue that the list was not past recollection recorded because of the time lapse between creation of the list and the events that E.S. described.
2. Standard of Review
¶ 62 Admissibility of evidence under CRE 803(5) is reviewed on appeal for an abuse of discretion. See, e.g., McCall v. Roper, 32 Colo.App. 352, 355, 511 P.2d 541, 543 (1973).
3. Law
¶ 63 CRE 803(5) provides:
A past recollection recorded when it appears that the witness once had knowledge concerning the matter and: (A) can identify the memorandum or record, (B) adequately recalls the making of it at or near the time of the event, either as recorded by the witness or by another, and (C) can testify to its accuracy. The memorandum or record may be read into evidence but may not itself be received unless offered by an adverse party.
¶ 64 To read a memorandum into evidence, the proponent needs only to establish these three requirements, and they may be satisfied whether the memorandum was recorded by the declarant or by another. See, e.g., People v. Velarde, 196 Colo. 254, 586 P.2d 6 (1978). When another person prepares the memorandum, it is admissible where both the speaker and the author are available and testify as to their respective roles. See id. at 257, 586 P.2d at 8.
4. Application
¶ 65 Here, both E.S. and the stepmother were available, testified to the list's accuracy, and disclosed their respective roles in having created it. Although the stepmother testified that it had been prepared simultaneously with E.S.'s recitation of the events, Miranda now argues that the temporal requirement refers to the relationship between the events described and the statement, not between the statement and its being recorded. Because Miranda failed to raise this argument below, we will reverse only if the error was plain and obvious. See Miller, 113 P.3d at 750. And for the following reasons, any error is not obvious.
¶ 66 In applying the common law hearsay exception, determining whether "the statement was made too remote in point of time to the date of the happening of the accident [i]s a matter resting within the discretion of the trial court and such determination will be *533 disturbed only if the trial court abused its discretion." McCall, 32 Colo.App. at 355, 511 P.2d at 543. Similarly, CRE 803(5) does not specify a time limitation for the preparation and adoption of the memoranda. Still,
[c]ases and commentators agree there are two possible approaches to determining the freshness of a recorded recollection under rule 803(5) : (1) a liberal approach that only requires "that the recollection, when recorded, should have been fairly fresh -each instance being dealt with on its own circumstances," or (2) a traditional approach that applies "an arbitrary test defining the recollection as one recorded at or near the time of the events."
TWN, Inc. v. Michel, 131 P.3d 882, 887 (Utah Ct.App.2006) (collecting commentaries and cases). Because the more liberal approach is favored in federal courts,[9] we apply it here. Thus, for the following reasons, we conclude that any error here was not obvious.
¶ 67 Neither the federal rule nor CRE 803(5) imposes "specific time constraints on the timing of the preparation and adoption of memoranda." United States v. Lewis, 954 F.2d 1386, 1393 (7th Cir.1992). To the contrary, the Advisory Committee's notes to the federal rule support broad discretion: "No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." Fed.R.Evid. 803(5) advisory committee's note to para. 5. Thus, despite some contrary authority,
the better view "is that the trial judge should not be rigidly bound by an inflexible rule but rather that it should be exercised on a case-by-case basis giving consideration to all pertinent aspects including the lapse of time which reasonably and properly bear upon the likelihood of the statement being an accurate recordation of the event to which the memory related."
Lewis, 954 F.2d at 1394 (quoting United States v. Senak, 527 F.2d 129, 141 (7th Cir.1975) ). And despite delays of varying degrees up to three years between the events described and a memorandum's creation, courts have held that the trial courts acted within their discretion in admitting the statements. See, e.g., United States v. Smith, 197 F.3d 225, 231 (6th Cir.1999) (fifteen-month delay); Lewis , 954 F.2d at 1394 (six-month delay); United States v. Patterson, 678 F.2d 774, 778-79 (9th Cir.1982) (ten-month delay); Senak , 527 F.2d at 141 (three-year delay). But see TWW, Inc., 131 P.3d at 888 (While concluding liberal approach is usually the best approach, a fourteen-year delay is such a "significant lapse of time" that it "weighs all but conclusively against a finding of freshness, absent other circumstances vouching for the recordation's freshness, accuracy, and trustworthiness.").
¶ 68 Here, although roughly two years lapsed between the first assault and the creation of the list, we cannot say that this time span was so long that E.S. obviously could no longer accurately recall the events that she recited. Thus, the trial court did not commit plain error in admitting the list under CRE 803(5).
¶ 69 Similarly, because defense counsel did not object to the jury briefly viewing the list during E.S.'s testimony, review is limited to plain error. While CRE 803(5) prohibits receiving the list into evidence, it does not address displaying the list to the jury, as occurred here during E.S.'s direct examination. Even assuming that the list should not have been published, any error was not obvious, for the following reasons:
• The list was displayed only briefly while the prosecutor questioned E.S. about it, not during her entire testimony.
• E.S. and the stepmother both testified that the list was accurate.
• Defense counsel agreed that the stepmother could read the list, provided that it was not admitted into evidence and shown to the jury.
• The trial court offered that a cautionary instruction might be warranted, but defense counsel did not request one.
*534 ¶ 70 Contrary to Miranda's assertion, the item on the list, "[s]he says he has made other attempts since then," is not dispositive of plain error. The prosecutor did not question either witness about this statement at length, nor was it highlighted during the prosecutor's closing argument. And we have upheld admission of res gestae evidence involving a similar statement as grooming behavior.
¶ 71 Because the record shows both that the list was admitted into evidence when E.S. testified and that the trial court ruled otherwise during the stepmother's testimony, determining whether it was submitted to the jury before deliberations is unclear. But even assuming that the list was erroneously submitted to the jury, we are not left with concern that those errors "so undermine[ ] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." People v. Flockhart, 310 P.3d 66, 69 (Colo.App.2009) (internal quotation marks omitted).
¶ 72 In addition to the reasons discussed above, unlike a video recording of a witness's statements, a list does not express "animation, passion, [and] vulnerability of the witness whose statements are captured on a videotaped exhibit." People v. Jefferson, 2014 COA 77, ¶ 21, --- P.3d ----. And the list neither served a gap-filling role nor was emphasized during closing argument. Id. at ¶¶ 28-29. Further, " '[t]he defendant has a responsibility to check exhibits' " before they are submitted to the jury-it is not the trial court's job to do so. People v. Garrison, 2012 COA 132, ¶ 41, 303 P.3d 117 (quoting People v. Bieber, 835 P.2d 542, 547 (Colo.App.1992) ).
IV. The Evidence was Sufficient to Support the Two Attempted Sexual Assault Convictions Concerning V.M.
¶ 73 Miranda next contends the trial court erred in denying his motion for judgment of acquittal on the V.M. attempt counts because "there was no evidence presented of any overt request and/or expressed dare for a sex act that Mr. Miranda made to V.M." We are not persuaded.
A. Preservation
¶ 74 Miranda's motion for a judgment of acquittal preserved this issue.
B. Standard of Review
¶ 75 Whether sufficient evidence supports a jury verdict is reviewed de novo. People v. Dutton, 2014 COA 51, ¶ 23, 356 P.3d 871. "In our review, we view the evidence, both direct and circumstantial, in the light most favorable to the prosecution to determine if it is substantial and sufficient to support the defendant's conviction beyond a reasonable doubt." People v. Poe, 2012 COA 166, ¶ 14, 316 P.3d 13. The jury's role as the fact-finder is "to weigh the credibility of witnesses, to determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence." Id. On review, we will not "substitute [our] judgment for that of the jury and reweigh the evidence or the credibility of witnesses." People v. Sharp, 104 P.3d 252, 256 (Colo. App. 2004).
C. Law
¶ 76 A defendant may be found guilty of criminal attempt if "acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18-2-101(1), C.R.S.2013. A substantial step is "any conduct that is strongly corroborative of the actor's criminal objective." People v. Lehnert, 163 P.3d 1111, 1113 (Colo.2007). This could include "searching out a contemplated victim, reconnoitering the place contemplated for commission of a crime, and possessing materials specially designed for unlawful use and without lawful purpose." Id. at 1115.
D. Application
¶ 77 Here, the following evidence was sufficient to show that Miranda took the required "substantial step" toward committing a sexual assault against V.M.:
• V.M. lived roughly three blocks from Miranda's apartment and the girls often walked between these locations, but on *535 the night in question, Miranda gave them a ride.
• On the way to V.M.'s house, Miranda pulled the car into a dark alley where a sexual assault could be committed without detection.
• Although E.S. was unsure how the game started, V.M. testified that Miranda asked both girls, "Would you like to play Truth or Dare?"
• V.M. testified that after Miranda had suggested playing the game, both girls "start[ed] playing" because they "really didn't know what to do."
• While E.S. testified that she could not recall the specifics of the first dare, she said that V.M. stopped playing the game only "after the first [dare]" because "she thought it was gross and she didn't want to do it," suggesting that V.M. had been part of the game for a period of time.
¶ 78 Thus, although V.M. testified that she stopped playing before Miranda had dared her to do anything, his overall conduct shows that he had taken all steps preparatory to assaulting V.M. in the same way he assaulted E.S. and engaged her in the game. See People v. Jackson, 972 P.2d 698, 701 (Colo.App.1998) ( "The overt act, however, need not be the last proximate act necessary to complete the offense."). Therefore, when viewed in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support defendant's conviction of the attempt charges concerning V.M.
V. Miranda Was Not Entitled to a New Trial
¶ 79 Finally, Miranda contends he was entitled to a new trial because his statements to the detective regarding the truth or dare incident were taken out of context in a redacted DVD that was given to the jury before deliberation. We reject this contention.
A. Background and Preservation
¶ 80 After the verdict, Miranda moved for a new trial, arguing that the redacted DVD could have misled the jury. In denying the motion, the trial court said that it had performed a "careful review of the two DVDs of Mr. Miranda's statements." But the court may have reviewed two redacted DVDs of the interview, rather than comparing the unredacted version. Miranda argued that this mistake prejudiced him because:
the Court was unaware the unredacted DVD contained [the detective's] statements to Mr. Miranda that concerned E.S. informing law enforcement that Mr. Miranda took E.S. and V.M. to V.M.'s house and Mr. Miranda affirmatively responding the he remembered dropping them both off at V.M.'s house.
He makes the same argument on appeal.
¶ 81 As set out in the Answer Brief, which Miranda did not contest in his Reply, the unredacted DVD included the following exchange:
Detective: Well, um, what, and she-she just told us about something else, and she kind of felt a little bad about this situation. And it was-she was kind of hesitant to tell us about it. Um, but she said that you and....
Miranda: Smoke pot? 'Cause I smoked some pot before, and, in the house one time. And it smelled in the house. And that was a long time ago, but besides that I don't know anything else.
Detective: Okay, do you have marijuana in the house?
Miranda: No. I have, one of my neighbors came by and he has I guess he's a medical thing what on and we were outside and he passed me the key and I hit it ... and uh joint. And that's about it sir.
Detective: And [E.S.] was there?
Miranda: No she wasn't there. But I figured out because it smelled. Because it smelled ... [unintelligible].
Detective: So you don't have any marijuana in the house right now?
Miranda: No sir.
Detective: Any other drugs?
Miranda: No sir.
Detective: You mind if we check?
Miranda: I don't care.
Detective: Okay, alright. Um, when we're done here I have a form for you sign here if that's okay.
*536 Miranda: Okay, that's fine.
Detective: We'll go over that later. Um, but, [E.S.]'s telling us about a time where, it was late at night and you took her and [V.M.] over to [V.M.]'s house.
Miranda: Okay.
Detective: Do you remember that?
Miranda: Yes I do.
Detective: Pretty recently?
Miranda: Yes. I dropped them both off at [V.M.]'s house.
Detective: Yeah. Pretty recently, a couple weeks I think maybe-
Miranda: Yeah, I gave them a ride there.
Detective: Do you remember her asking you to play truth or dare?
Miranda: No sir.
Detective: You don't remember that?
Miranda: No sir.
Detective: You don't remember that?
Miranda: No sir. I just gave them a ride to [V.M.]'s house and dropped them off, that's all.
¶ 82 By comparison, the exchange in the redacted DVD went as follows:
Detective: Well, um, what, and she-she just told us about something else, and she kind of felt a little bad about this situation. And it was-she was kind of hesitant to tell us about it. Um....
[Visible redaction, parties suddenly shift in the frame]
Detective: but, pretty recently, a couple weeks I think maybe-
Miranda: Yeah, I gave them a ride there.
Detective: Do you remember her asking you to play truth or dare?
Miranda: No sir. Detective: You don't remember that?
Miranda: No sir. I just gave them a ride to [V.M.]'s house and dropped them off, that's all.
B. Standard of Review
¶ 83 A trial court's ruling on a motion for a new trial is reviewed for abuse of discretion. See, e.g., People v. Wadle, 97 P.3d 932, 936 (Colo.2004). Even so, here we can independently review the DVDs because appellate courts may undertake "independent review of the facts" where "statements were audio- and video-recorded," "no disputed facts outside that record bear[ ] on the issue," and "the trial court did not make detailed factual findings." People v. Madrid, 179 P.3d 1010, 1014 (Colo.2008) (issue whether defendant's statements in interrogation video properly suppressed); see also People v. Martin, 222 P.3d 331, 334 (Colo.2010) ("[W]e conduct an independent review of the interrogation video."); People v. Osorio-Bahena, 2013 COA 55, ¶ 49, 312 P.3d 247 (independently review videotaped interview of a victim to determine competency).
C. Application
¶ 84 After comparing the transcripts of the unredacted and redacted interrogation, we conclude that the DVD could not have created any meaningful risk of misleading the jury, for the following reasons:
• Miranda denied having played truth or dare with the girls in both versions;
• he also denied having done so when he testified at trial; and
• the jury viewed the redacted DVD only once during deliberations.
¶ 85 In addition, Miranda does not dispute having reviewed the redacted DVD during trial and agreeing that it could be played for the jury after the references to marijuana had been removed. And his assertion that he had limited time to review the redacted DVD was not raised during trial, was rejected by the court post-trial, and ignores his responsibility to review exhibits before they are submitted to the jury. Garrison, ¶ 41.
VI. Conclusion
¶ 86 The judgment of conviction is affirmed.
JUDGE MILLER concurs.
JUDGE GABRIEL specially concurs.

For example, E.S. testified that Miranda's hand was simply placed on her vagina during the first assault, but during her interview she explained that his hand was moving.

The trial court inquired whether the prosecutor was also offering the recording under section 13-25-129, C.R.S.2013. The prosecutor replied, "I don't think we even get there because I think it's clear under the case law that the video is admissible under these circumstances."

On appeal, Miranda asserts that the recording includes inappropriate comments by the interviewer. But below, defense counsel neither raised this concern nor asked that the recording be redacted, as he did with Miranda's statement to the detective, discussed in Part V below. And in any event, interviewer comments that provide context are generally admissible. See Davis v. People, 2013 CO 57, ¶ 19, 310 P.3d 58.

Miranda frames the issue on appeal under both the Colorado and United States Constitutions. But because he did not raise the state constitution below, we will only address his federal constitutional claim. See, e.g., People v. Banks, 2012 COA 157, ¶ 69, 412 P.3d 417 ("[W]e decline to consider arguments under the state constitution unless the defendant argued at trial that the state constitution provides greater protection than the federal constitution.").

If defense counsel's general reference to Crawford below was sufficient to preserve this issue on appeal, it would still fail because his confrontation rights were not violated. The threshold question, whether applying plain error or constitutional harmless error, is whether the trial court erred. See Hagos v. People, 2012 CO 63, ¶ 9, 288 P.3d 116 ("Appellate courts in Colorado employ one of five different standards to determine whether an error in criminal proceedings necessitates reversal of the judgment of conviction. These five standards differ by the degree to which they require that the error impair the reliability of the judgment of conviction.") (footnote omitted).

Despite Miranda's assertion that the record does not show whether E.S. was available to be recalled, "[i]t makes no difference ... whether the burden is on the [prosecution] or on [the defendant] to show that [the witness] was available for further cross-examination after the court told [her] [s]he could 'step down.' [The witness] testified at trial and was cross-examined concerning [her] statements ... therefore, [the defendant's] right to confrontation was not violated." State v. Nelis, 300 Wis.2d 415, 733 N.W.2d 619, 628 (2007).

Section 16-10-201, C.R.S.2013, is limited to use of prior inconsistent statements as substantive evidence and requires only that the "witness is still available" to give further testimony. People v. Saiz, 32 P.3d 441, 445 (Colo.2001) (Section 16-10-201"eliminate[s] the hearsay impediment to using prior inconsistent statements for the purpose of establishing a fact to which witness' testimony and prior statement relate, as long as the witness is still available and his prior statement relates to a matter within his own knowledge.").

Although the grooming evidence was proffered in Truman under Idaho Rule of Evidence 404(b), the behavior is relevant to the res gestae analysis here.

See, e.g., United States v. Green, 258 F.3d 683, 689 (7th Cir.2001) ; United States v. Smith, 197 F.3d 225, 231 (6th Cir.1999) ; United States v. Patterson, 678 F.2d 774, 778-79 (9th Cir.1982).