The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 8, 2022

## 2022COA139

### No. 20CA0764, *People v. Johnson* — Crimes — Enticement of a Child — Attempt to Invite or Persuade a Child — Substantial Step

A division of the court of appeals considers whether evidence

that a defendant uttered sexually tinged words to a child standing

on a sidewalk while the defendant was in a vehicle was sufficient to

prove that the defendant attempted to invite or persuade the child

to enter the vehicle or intended to sexually assault or engage in

unlawful sexual contact with the child. The division holds that (1)

the defendant's words alone were insufficient to establish the

"substantial step" necessary to prove that he attempted to invite or

persuade the child to enter the vehicle and (2) the defendant's

words were insufficient to establish that he intended to commit

sexual assault or engage in unlawful sexual contact. The division

thus concludes that the prosecution did not introduce sufficient evidence to prove the offense of enticement of a child. Accordingly, the division vacates the defendant's conviction and remands to the trial court with instructions to dismiss the charges with prejudice.

COLORADO COURT OF APPEALS                                    2022COA139

Court of Appeals No. 20CA0764
Jefferson County District Court No. 19CR2061
Honorable Lily W. Oeffler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Clayton Johnson,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE LIPINSKY
Freyre and Casebolt*, JJ., concur

Announced December 8, 2022

Philip J. Weiser, Attorney General, Alejandro Sorg, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Golden, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2022.

¶ 1    The crime of enticement of a child requires proof beyond a reasonable doubt that the defendant (1) invited, persuaded, or attempted to invite or persuade "a child under the age of fifteen years to enter any vehicle, building, room, or secluded place," (2) "with the intent to commit sexual assault or unlawful sexual contact upon said child." § 18-3-305(1), C.R.S. 2022.  In this case, we consider whether the evidence that defendant, James Clayton Johnson, uttered sexually tinged words to a child who was standing on a sidewalk with her dog while he was in a vehicle was sufficient to prove that he attempted to invite or persuade the child to enter the vehicle or intended to sexually assault or engage in unlawful sexual contact with the child.

¶ 2    First, we hold that Johnson's words alone were insufficient to establish the "substantial step" necessary to prove that he attempted to invite or persuade the child to enter the vehicle.  Thus, the words Johnson uttered did not prove the wrongful conduct element of the offense.  Second, we hold that Johnson's words were also insufficient to establish that he intended to commit sexual assault or engage in unlawful sexual contact.

1

¶ 3     For these reasons, we conclude that the prosecution did not introduce sufficient evidence to prove the offense of enticement of a child and vacate Johnson's conviction.

## I.     Background

¶ 4     The evidence introduced at trial established that ten-year-old A.W. was walking her dog in her neighborhood when a man pulled up in a truck alongside her.  Johnson contends that the prosecution failed to prove that he was that man.  For purposes of this opinion, however, we assume that Johnson was the individual who was driving the truck.  As we explain below, even if the prosecution linked Johnson to the incident, the evidence presented at trial was insufficient to support his conviction for enticement of a child.

¶ 5     The man complimented A.W.'s dog and asked for her name and age and where she lived.  When A.W. said she was ten, the man responded that ten was "the perfect age for a boyfriend."  The man then asked A.W. whether she had "ever touched it" and added that he was "just curious."  When A.W. started to walk away, the man drove down the street in the opposite direction at a normal speed.

The interaction lasted less than two minutes. The child told her mother about the incident and the mother reported it to the police.

¶ 6    A few days later, A.W.'s mother reported to the police that she had seen a man and a truck that matched A.W.'s descriptions of the man who had approached her and the truck he had been driving. A.W.'s mother provided the police with the license plate number of the truck she had seen. A detective identified Johnson as the owner of that truck through the license plate number. Johnson was arrested and charged with enticement of a child in violation of section 18-3-305(1) and violation of bail bond conditions imposed in another case. He was tried before a jury on the first charge and, after his conviction, the bail bond charge was dismissed.

## II.    Analysis

¶ 7    Johnson contends that his conviction should be vacated because the evidence introduced at trial was insufficient to support his conviction. Alternatively, he argues that his conviction should be reversed because the trial court erred by admitting evidence of a prior act under CRE 404(b), failing to properly instruct the jury, and failing to appoint new counsel for him. The CRE 404(b) evidence showed that, while in Louisiana, Johnson had persuaded a five-

year-old girl to enter his car, driven her to a store, and kissed her on the lips before letting her go. He was charged with aggravated kidnapping for those acts. Because we agree that the evidence, including the CRE 404(b) evidence, was insufficient to sustain Johnson's conviction for enticement of a child, we do not reach the merits of his other arguments.

## A. Standard of Review

¶ 8 We review sufficiency of the evidence claims de novo. *Gorostieta v. People*, 2022 CO 41, ¶ 16, 516 P.3d 902, 905. To sustain a conviction, we consider "whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Id.* (quoting *People v. Harrison*, 2020 CO 57, ¶ 32, 465 P.3d 16, 23). We give the prosecution "the benefit of every reasonable inference which might be fairly drawn from the evidence." *Id.* at ¶ 17, 516 P.3d at 905 (quoting *Harrison*, ¶ 32, 465 P.3d at 23). Those inferences must be supported by a "logical and convincing connection between the facts established and the conclusion

inferred." *People v. Perez*, 2016 CO 12, ¶ 25, 367 P.3d 695, 701 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).

¶ 9    In conducting a sufficiency of the evidence analysis, we consider *all* evidence that the trial court admitted at trial, even if we determine that the court erred by admitting certain of that evidence. This is so because "a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence." *Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988).  Under this type of analysis, we consider the "same quantum of evidence" that the trial court admitted.  *Id.* at 42.

¶ 10    Thus, "in determining whether the evidence in this case is sufficient to support defendant's conviction, it is permissible for us to consider the [challenged evidence]" even if we were to conclude that the court improperly admitted it.  *People v. Williams*, 183 P.3d 577, 581 (Colo. App. 2007) (citing *Lockhart*, 488 U.S. at 40).  By contrast, "where reversal is predicated upon trial error consisting of the reception of inadmissible evidence, remand for a new trial is proper . . . and an appellate court should *not* review the remaining evidence in order to determine whether it is sufficient to sustain the

5

conviction." *People v. Sisneros*, 44 Colo. App. 65, 68, 606 P.2d 1317, 1319 (1980) (emphasis added).

¶ 11 If we conclude that a conviction must be reversed "solely because of evidentiary insufficiency, the double jeopardy clause of the United States Constitution requires entry of a judgment of acquittal." *Id.* at 67, 606 P.2d at 1319.

¶ 12 We therefore consider whether the evidence presented at Johnson's trial, including the CRE 404(b) evidence that Johnson challenges as inadmissible, was sufficient to support his conviction. Thus, we need not first decide whether the trial court erred by admitting the CRE 404(b) evidence.

### B. The Enticement of a Child Statute

¶ 13 To convict Johnson of enticement of a child, the prosecution was required to prove the following elements:

 (1) in the State of Colorado, at or about the date and place charged,

 (2) with the intent,

 (3) to commit the crime of sexual assault or unlawful sexual contact upon a child,

(4)   Johnson invited, persuaded, or attempted to invite or persuade a child, under the age of fifteen,

(5)   to enter any vehicle, building, room, or secluded place.

*See* § 18-3-305(1); COLJI-Crim. 3-3:15 (2021).

¶ 14   A "sexual assault" is the "knowing[] inflict[ion] [of] sexual intrusion or sexual penetration on a victim" if, as relevant here, the actor knows the victim does not consent or the "actor knows that the victim is incapable of appraising the nature of the victim's conduct." § 18-3-402(1), C.R.S. 2022.

"Sexual contact" includes the

> knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

§ 18-3-401(4)(a), C.R.S. 2022.  An "unlawful sexual contact" occurs if, as applicable here, the "actor knows that the victim does not consent" or the "actor knows that the victim is incapable of appraising the nature of the victim's conduct." § 18-3-404(1), C.R.S. 2022.  A person can also commit unlawful sexual contact by knowingly inducing or coercing a child to expose his or her

7

"intimate parts," as defined in section 18-3-401(2), for the purpose of "the actor's own sexual gratification."  § 18-3-404(1.5).

### C.    Analysis

¶ 15     Johnson specifically argues that the evidence was insufficient to prove the wrongful act (actus reus), intent, and identity elements of the enticement of a child offense.  In this case, the actus reus element of the offense was an alleged attempt to invite or persuade a child to enter a vehicle with the defendant.

¶ 16     We agree that the evidence admitted at trial, including the CRE 404(b) evidence, viewed as a whole and in the light most favorable to the prosecution, was not substantial and sufficient to support a conclusion by a reasonable mind that Johnson (1) attempted to invite or persuade A.W. to enter the vehicle, or (2) intended to sexually assault A.W. or engage in an unlawful sexual contact with her.

### 1.    Actus Reus

¶ 17     Because, as the parties agree, the record does not show that Johnson expressly invited or persuaded A.W. to enter the truck, we consider whether he attempted to do so.  The location element of the enticement of a child offense — here, a truck — is significant

8

because it distinguishes the offense from the offenses of actual or attempted sexual assault or unlawful sexual contact. *See Commonwealth v. Hall*, 952 N.E.2d 951, 957 (Mass. App. Ct. 2011) (noting that "a primary purpose of the child enticement statute . . . is to provide further protection for children against the risks of danger or harm that lurk when a child is lured to a place chosen . . . by a predator" because the offense would otherwise "have little or no difference from the crime that the defendant was alleged to have intended").

¶ 18     Courts "analyze[] the enticement statute's 'attempt' language in conjunction with the criminal attempt statute." *People v. Vecellio*, 2012 COA 40, ¶¶ 45-46, 292 P.3d 1004, 1015; *see also People v. Grizzle*, 140 P.3d 224, 226 (Colo. App. 2006). A person commits criminal attempt if, with the requisite intent, he or she "engage[d] in conduct constituting a substantial step toward the commission of the offense." § 18-2-101(1), C.R.S. 2022. "A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.* This "merely requires some overt act beyond preparation; however,

the overt act need not be the last proximate act necessary to complete the offense." *People v. Boles*, 280 P.3d 55, 63-64 (Colo. App. 2011).

¶ 19    The People rely on *People v. Miranda*, 2014 COA 102, 410 P.3d 520, to support their argument that a defendant can take a substantial step toward the commission of the offense of enticement of a child even if the victim disengaged before the defendant completed the "last proximate act."  In that case, the defendant was driving the victim and another girl when he stopped his car in a dark alley, asked the girls to play "truth or dare," and dared the other girl to touch his penis and place it in her mouth, which she did.  *Id.* at ¶¶ 3, 77-78, 410 P.3d at 524, 535.  Although the victim had disengaged from the game before the defendant could dare her to do anything, a division of this court concluded that the defendant's overall conduct showed that he had taken "all steps preparatory" to assaulting the victim in the same way he had assaulted the other girl.  *Id.* at ¶ 78, 410 P.3d at 535.  The court thus held that the evidence was sufficient to support his conviction of an attempted sexual assault on the victim.  *Id.*

¶ 20     The facts in this case are materially different from those in *Miranda*.  The People argue that Johnson took substantial steps toward inviting or persuading A.W. to enter the truck by (1) stopping the truck next to A.W. upon seeing her alone with her dog; (2) attempting to lower A.W.'s guard by complimenting the dog; (3) telling her that ten was a "perfect age for a boyfriend"; and (4) asking A.W. whether she had "ever touched it."  They assert that, by walking away, A.W. prevented Johnson from completing the "last proximate act," which, they allege, "would have been an explicit invitation" to enter the truck, like the invitation to the victim to play "truth or dare" in *Miranda*.  We are not persuaded.

¶ 21     Unlike in *Miranda*, Johnson's actions were not "strongly corroborative" of the "firmness of [a] purpose to complete" the actus reus — inviting or persuading A.W. to enter the truck.  *See* § 18-2-101(1); *see Miranda*, ¶ 78, 410 P.3d at 535.  None of Johnson's actions established or even suggested that he wanted A.W. to enter the truck.  It is important to note what the record evidence did *not* show:

- Johnson did not say anything to A.W. about the truck, much less expressly or implicitly ask her to enter it;

- he did not gesture for A.W. to enter the truck;

- Johnson did not make any movement toward A.W. or the door of the truck;

- he did not open the door of the truck to allow her to enter;

- he did not step out of the truck;

- after A.W. began walking away, he took no actions to stop her, did not ask her to stop, and did not say or do anything to attempt to convince her to walk back to the truck; and

- when A.W. walked off, Johnson did not follow her; rather, he drove away in the opposite direction at a normal speed.

¶ 22    Although Johnson's statements to A.W. were highly inappropriate, making inappropriate statements to a child or asking an underaged stranger personal questions, without more, does not satisfy the "attempted to invite or persuade to enter a vehicle" element of the offense of enticement. *Cf. Commonwealth v. Hart*, 28 A.3d 898, 910 (Pa. 2011) (holding that "an attempt to lure . . . does not occur upon the mere offer of a ride in a motor vehicle to a child,

12

but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle"); *United States v. Isabella*, 918 F.3d 816, 832 (10th Cir. 2019) (assessing "substantial steps toward persuasion or enticement to engage in sexual activity" and describing the "rough line between 'harmless banter' and illegal inducement").

¶ 23　　Thus, the evidence did not establish that, by the time A.W. walked away, Johnson had taken "all steps preparatory" to the offense of enticement of a child. *See Miranda*, ¶ 78, 410 P.3d at 535. Therefore, the evidence introduced at trial was insufficient to prove the actus reus element of the offense of enticement of a child — that Johnson "attempt[ed] to invite or persuade [A.W.] to enter" the truck. *See* § 18-3-305(1).

2.　　Intent

¶ 24　　Even if Johnson had attempted to invite or persuade A.W. to enter the truck, the prosecutor did not introduce "substantial and sufficient" evidence that he intended to commit a sexual assault or engage in an unlawful sexual contact. *See Montes-Rodriguez v. People*, 241 P.3d 924, 927 (Colo. 2010).

¶ 25    The record evidence does not tell us what Johnson was thinking during the encounter beyond an intent to engage in an inappropriate conversation with a child.  We acknowledge that Johnson's comment that A.W. was the "perfect age for a boyfriend" and his question whether she had "ever touched it" could indicate to a reasonable mind that Johnson had sexual thoughts about A.W.  However, there is too large an inferential leap between those thoughts and a formed intent to act upon them by committing sexual assault or engaging in an unlawful sexual contact.  *See Perez*, ¶ 25, 367 P.3d at 701 (noting that a "verdict cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence," and the inferences drawn from the evidence "must be supported by a 'logical and convincing connection between the facts established and the conclusion inferred'") (citations omitted).  Unlike the fourteenth century English statute that criminalized imagining the death of the King, our laws "do not punish people's culpable mental states unless they take some implementing action."  Adam J. Kolber, *Two Views of First Amendment Thought Privacy*, 18 U. Pa. J. Const. L. 1381, 1398 (2016).  "It is fundamental that a civilized society does not punish

for thoughts alone." *United States v. $11,500.00 in U.S. Currency*, 869 F.3d 1062, 1072 (9th Cir. 2017) (quoting Model Penal Code § 2.01 cmt. (Am. L. Inst. 1985)).

¶ 26    We next address the evidence that the People contend shows Johnson's intent to commit a sexual assault upon, or engage in wrongful sexual contact with, A.W.

### a.    Intent to Commit Sexual Assault

¶ 27    The trial record is devoid of evidence that Johnson intended to commit a sexual assault. In *People v. Derrera*, the Colorado Supreme Court concluded that evidence establishing that the defendant touched the victim's thigh and asked her to go to his apartment, "without more, is insufficient . . . to establish any 'intent' to commit the crime of second-degree sexual assault." 667 P.2d 1363, 1371 (Colo. 1983). Here, although Johnson made inappropriate comments with sexual connotations, he expressed even less of an intent to engage in a sexual assault than did the defendant in *Derrera*. Johnson neither touched A.W. nor asked her to enter the truck. Johnson's words were insufficient to establish an intent to sexually assault A.W., just as they were insufficient to

15

prove that Johnson intended to invite or persuade her to enter the truck.

### b. Intent to Engage in an Unlawful Sexual Contact

¶ 28    Similarly, the evidence introduced at Johnson's trial fell short of proving that he intended to engage in an unlawful sexual contact. To establish Johnson's alleged intent to engage in an unlawful sexual contact, the People point to the nature of Johnson's comments and to the CRE 404(b) evidence.

¶ 29    As noted above, although the nature of Johnson's comments might suggest he had sexual thoughts while speaking with A.W., the evidence of his words and conduct was not "substantial and sufficient to support a conclusion by a reasonable mind" that he intended to act upon such thoughts.  *See Gorostieta*, ¶ 16, 516 P.3d at 905 (quoting *Harrison*, ¶ 32, 465 P.3d at 23).

¶ 30    The CRE 404(b) evidence, even if properly admitted, also did not prove that Johnson intended to engage in unlawful sexual contact with A.W.  That evidence showed that, in the Louisiana incident, Johnson told the five-year-old girl that she should "get in the car" because it was too dangerous for her to play in the street. She complied.  He said that he would take her home but instead

16

drove her to a store. While parked by the store, Johnson kissed the girl on the lips and then let her go.

¶ 31 The two incidents were too different to constitute a "pattern" that could establish Johnson's intent in speaking with A.W. *See People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) ("A greater number of incidents of similar behavior is important in proving that it is directed or purposive rather than coincidental."). The two incidents were similar only in that they involved a man stopping his vehicle in a residential area to speak with a young girl for a few minutes. In the Louisiana case, Johnson told the child to enter his car and kissed her, but he did not say anything of a sexual nature to her. By contrast, Johnson did not ask A.W. to enter the truck and made no physical contact with her, although he made sexually tinged comments to her. As in *People v. Williams*, the evidence of "a design to commit crimes like the one charged was virtually nonexistent." 2020 CO 78, ¶ 22, 475 P.3d 593, 600.

¶ 32 And even if Johnson intended to do to A.W. what he had done to the girl in Louisiana — kiss her on the lips — the General Assembly did not include a mouth in the definition of "intimate part." *See* § 18-3-401(2). Thus, a kiss on the lips by itself is not an

17

unlawful sexual contact.  *See* § 18-3-401(4)(a).  Nothing that Johnson did to the child in Louisiana could support a conclusion by a reasonable mind that he intended to engage in an unlawful sexual contact with A.W.

¶ 33    For these reasons, the evidence was insufficient to prove that Johnson possessed the intent to commit the offense of enticement of a child.

## III.    Conclusion

¶ 34    Johnson's judgment of conviction is vacated.  The case is remanded to the trial court with instructions to dismiss the charges against Johnson with prejudice.

JUDGE FREYRE and JUDGE CASEBOLT concur.