*Id.* at 723–24, 122 S.Ct. 2460.

2014 COA 51

The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Anton Paul DUTTON, Defendant-Appellant.

Court of Appeals No. 11CA1456

Colorado Court of Appeals, Div. I.

Announced April 24, 2014

Jefferson County District Court No. 10CR1060, Honorable Tamara S. Russell, Judge

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Adam Mueller, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee

Opinion by JUDGE FURMAN

¶ 1 Defendant, Anton Paul Dutton, appeals the judgment of conviction finding him guilty of vehicular eluding, aggravated driving after revocation prohibited (aggravated DARP), reckless driving, and driving in excess of the speed limit. He contends that (1) the trial court abused its discretion in admitting a statement from a phone call to a police officer that was insufficiently authenticated under CRE 901 as a call made by him, (2) there was insufficient evidence to support his reckless driving and vehicular eluding convictions, and (3) his vehicular eluding and reckless driving convictions should be vacated because they are lesser included offenses of aggravated DARP. Because we disagree with Dutton's first two contentions but agree, in part, with his third contention, we affirm with respect to all but his conviction for reckless driving, which we vacate.

## I. The Driving Incident

¶ 2 A police officer was parked on the side of the road monitoring traffic when he saw a vehicle traveling in excess of the posted speed limit. The vehicle slowed as it approached the officer, and the officer was able to look through the windshield and see a male driver and two female passengers.

¶ 3 After the vehicle passed by, the officer pulled behind it, activated his overhead lights, and hit several bursts of his siren. The vehicle eventually pulled over to the side of the road, and the officer parked behind it.

¶ 4 As the officer opened the door of his patrol car, the vehicle rapidly accelerated, spinning its tires so that they threw up sand and gravel. The vehicle reached thirty miles per hour before the end of the street. The vehicle then failed to stop at a posted sign and slid sideways through an intersection before turning left onto another street.

¶ 5 The officer returned to his patrol car and began pursuing the vehicle, with his overhead lights still activated. He pulled behind the vehicle again, but the vehicle continued to accelerate.

¶ 6 Looking ahead, the officer saw a pedestrian with a dog on the left side of the street and another pedestrian on the right side of the street. The pedestrian on the left side was beginning to cross the street, so the vehicle had to swerve in order to avoid hitting the pedestrian. Immediately, the officer ended his pursuit because he felt that the vehicle was putting him, the female passengers, pedestrians, and other citizens in danger. The officer saw the vehicle continue to speed away before it made an abrupt right turn onto another street.

¶ 7 After the officer returned to the police station, he determined that the vehicle identification number was registered to a woman, E.J. The officer called E.J., who told him that Dutton was the last person she knew who had the car. Several months earlier, E.J. had left the car, along with its keys, with Dutton, who was a mechanic. E.J. had also agreed to sell the car to Dutton's wife for $200. But, E.J. did not receive the $200, and she had been unable to contact Dutton for several months.

¶ 8 After E.J. spoke to the officer, she called Dutton and told him that the officer had contacted her. Dutton became angry with her because he thought she had called the police about him. Nevertheless, E.J. gave Dutton the officer's contact information and tried to get Dutton to contact the officer.

¶ 9 The officer then received several phone calls from an individual who identified himself as "Anton Dutton," but the officer was unable to persuade the caller to come to the police station.

¶ 10 Eventually, the officer identified Dutton in a pretrial photo lineup as the driver of the car. Dutton had previously been served with notice that he was a habitual traffic offender and that his right to operate motor vehicles had been revoked.

¶ 11 At trial, Dutton's defense was that he was not the driver of the vehicle.

## II. Phone Statement

■ ¶ 12 We first consider whether the trial court abused its discretion in admitting a statement from a phone call to a police officer that was insufficiently authenticated under CRE 901 as a call made by Dutton. We conclude it did not.

¶ 13 According to CRE 901(a), "authentication or identification" is "a condition precedent to admissibility" that may be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

¶ 14 With regard to a phone call, self-identification is sufficient to establish the identity of a party to the call when it is coupled with additional circumstantial evidence. *See* CRE 901(b)(6); *see also United States v. Kingston*, 971 F.2d 481, 485 (10th Cir.1992); *United States v. Orozco–Santillan*, 903 F.2d 1262, 1266 (9th Cir.1990) ("The identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge of facts known peculiarly to the caller.") (citing *United States v. Miller*, 771 F.2d 1219, 1234 (9th Cir.1985)), *overruled in part on other grounds by Planned Parenthood of the Columbia/ Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1066–70 (9th Cir. 2002) (en banc).

■ ¶ 15 We review a trial court's ruling on authentication for an abuse of discretion. *See People v. Warrick*, 284 P.3d 139, 141 (Colo.App.2011). We will not disturb the trial court's ruling "unless the ruling is manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 16 The prosecution sought to introduce the testimony of the officer that he received a phone call from an individual identifying himself as "Anton Dutton" and that, during this phone call, the caller stated, "The reason that we took off was because that b[* * * *] hasn't given me the papers for the car and I didn't want to go to jail for grand theft auto."

¶ 17 The prosecution presented the following evidence to establish that the caller was, in fact, Dutton.

• The officer called E.J., and E.J. told him that she would contact Dutton, provide Dutton with the officer's contact information, and ask Dutton to call the officer. E.J. then called Dutton, gave him the officer's contact information, and asked him to call the officer.

• Less than twenty minutes after calling E.J., the officer received a phone call from an individual identifying himself as "Anton Dutton."

• The caller demonstrated familiarity with the facts of the incident, including that the car was being sold and that there was more than one person in the car.

¶ 18 Over a defense objection, the trial court admitted the statement from the phone call.

¶ 19 We conclude that there was sufficient evidence to authenticate the phone call because the timing of the call to the officer and the caller's self-identification as "Anton Dutton" allowed the jury to reasonably infer that Dutton received the officer's message to call him through E.J. and then promptly responded to it by calling the officer. *See* CRE 901(b)(6); *Kingston*, 971 F.2d at 485; *Orozco–Santillan*, 903 F.2d at 1266.

## III. Insufficient Evidence

■ ¶ 20 We next consider whether there was sufficient evidence that Dutton drove recklessly to support his reckless driving and vehicular eluding convictions. We conclude there was.

¶ 21 A person commits reckless driving if he or she drives a motor vehicle "in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property." § 42–4–1401(1), C.R.S.2013.

¶ 22 A person commits vehicular eluding when, "while operating a motor vehicle, [he

or she] knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and ... knows or reasonably should know that he or she is being pursued by said peace officer, and ... operates his or her vehicle in a reckless manner." § 18–9–116.5(1), C.R.S.2013. "A person acts recklessly when he [or she] consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(8), C.R.S.2013.

¶ 23 We review de novo whether there is sufficient evidence to support a conviction. *See Clark v. People*, 232 P.3d 1287, 1291 (Colo.2010). When reviewing the sufficiency of evidence, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *Id.* at 1291–92.

¶ 24 At trial, the officer testified that he saw Dutton:

- spin his wheels so that they threw up sand and gravel;
- accelerate rapidly;
- travel at high rates of speed that were not safe for the area;
- fail to stop at a stop sign;
- fail to slow for turns;
- slide sideways through turns;
- continue to accelerate while being pursued by a police officer with activated overhead lights; and
- swerve to avoid a pedestrian crossing the street.

And, the officer testified that, in his opinion, Dutton was driving recklessly.

¶ 25 Based on the officer's testimony, we conclude that there was sufficient evidence for the jury to find that Dutton drove the vehicle recklessly, given testimony that Dutton was driving at unsafe speeds and almost hit a pedestrian. *See id.* at 1291–92. Thus, there was evidence to support the jury's finding that he drove "in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property." § 42–4–1401(1); *see Clark*, 232 P.3d at 1291–92. And, the officer's testimony was sufficient to support the jury's finding that he "consciously disregard[ed] a substantial and unjustifiable risk" of harm. § 18–1–501(8); *see Clark*, 232 P.3d at 1291–92.

¶ 26 Although Dutton appears to contend that the risk involved was not substantial because there was little traffic and the pursuit only lasted a few blocks, the testimony that he almost hit a pedestrian due to his high and unsafe speed was sufficient to support the jury's verdict. § 18–1–501(8); *see Clark*, 232 P.3d at 1291–92.

IV. Lesser Included Offenses

¶ 27 We last consider whether Dutton's reckless driving and vehicular eluding convictions should be vacated because they are lesser included offenses of aggravated DARP. We conclude that only Dutton's reckless driving conviction should be vacated.

¶ 28 As Dutton did not preserve this issue for appeal, we review for plain error. *People v. Tillery*, 231 P.3d 36, 47–48 (Colo. App.2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo.2011). Even so, suffering two convictions when the double jeopardy clauses permit only one is necessarily plain error. *Tillery*, 231 P.3d at 48.

¶ 29 "For purposes of both double jeopardy and merger, a defendant may be subjected to multiple punishments based upon the same criminal conduct as long as such punishments are 'specifically authorized' by the General Assembly." *People v. Leske*, 957 P.2d 1030, 1035 (Colo.1998). But, a defendant's convictions merge if "[o]ne offense is included in the other." § 18–1–408(1)(a), C.R.S.2013; *Meads v. People*, 78 P.3d 290, 293 (Colo.2003). Whether one offense is included in another is determined by comparing "the statutory elements of the offenses in question, not the evidence presented at trial." *Leske*, 957 P.2d at 1036.

¶ 30 When comparing the elements of two offenses, an offense is included in another only if proof of the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense. *Meads*, 78 P.3d at 293.

¶ 31 Section 42–2–206(b)(I), C.R.S.2013, gives the elements of aggravated DARP:

A person commits the crime of aggravated driving with a revoked license if he or she is found to be an habitual offender and thereafter operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect and, as a part of the same criminal episode, also commits any of the following offenses:

(A) DUI or DUI per se;

(B) DWAI;

(C) Reckless driving, as described in section 42–4–1401;

(D) Eluding or attempting to elude a police officer, as described in section 42–4–1413;

(E) Violation of any of the requirements specified for accidents and accident reports in sections 42–4–1601 to 42–4–1606; or

(F) Vehicular eluding, as described in section 18–9–116.5, C.R.S.

¶ 32 The jury found that Dutton's conviction for aggravated DARP was predicated on him committing vehicular eluding and reckless driving, which are both lesser included offenses of aggravated DARP. *See People v. Espinoza*, 195 P.3d 1122, 1130 (Colo.App. 2008) (vehicular eluding is a lesser included offense of aggravated DARP).

¶ 33 But, where a conviction is predicated on more than one offense, only one of those offenses need be merged, as only one predicate offense is essential to support the greater offense. *See* § 42–2–206(b)(I) (defining aggravated DARP to require that a defendant commit only one of the enumerated predicate offenses); *see also Callis v. People*, 692 P.2d 1045, 1054 (Colo.1984); *People v. Huynh*, 98 P.3d 907, 915 (Colo.App.2004).

¶ 34 We conclude reckless driving must merge into Dutton's aggravated DARP conviction because we must uphold "as many sentences as are legally possible to fully effectuate the jury's verdict." *People v. Glover*, 893 P.2d 1311, 1315 (Colo.1995). Because the reckless driving conviction was the lower class of offense, *compare* § 42–4–1401(2) (reckless driving is class 2 misdemeanor offense) *with* § 18–9–116.5(2)(a) (vehicular eluding is a class 5 felony offense), merging the reckless driving conviction would best effectuate the jury's verdict. *See Glover*, 893 P.2d at 1315.

¶ 35 The People's reliance on *People v. Zubiate*, 2013 COA 69, —— P.3d ——, for the proposition that reckless driving and vehicular eluding are not elements of aggravated DARP but are, instead, sentence enhancers, is misplaced. Section 42–2–206(b)(III) includes sentence enhancement provisions that apply only to DUI, DUI per se, or DWAI, under the aggravated DARP statute. And, section 42–2–206(b)(III)(C) specifically provides that the lesser included offense provisions of section 18–1–408 do not apply to the alcohol-related offenses. The fact that the legislature specifically addressed the provisions of section 42–2–206(b)(III) only to the alcohol-related offenses suggests that the other driving offenses, such as reckless driving and vehicular eluding, are subject to the merger provisions in section 18–1–408. *See Beeghly v. Mack*, 20 P.3d 610, 613 (Colo.2001) ("Under the rule of interpretation *expressio unius exclusio alterius*, the inclusion of certain items implies the exclusion of others."). Accordingly, the reasoning in *Zubiate* only applies to the alcohol-related offenses, not to reckless driving or vehicular eluding.

¶ 36 Dutton's conviction for reckless driving must merge under his conviction for aggravated DARP.

## V. Conclusion

¶ 37 We vacate Dutton's conviction for reckless driving. In all other respects, the judgment of conviction is affirmed. The case is remanded to the trial court to amend the mittimus.

JUDGE TAUBMAN and JUDGE DUNN concur.