The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 12, 2019

**2019COA181**

**No. 17CA2054, *People v. Procasky* — Crimes — Eluding or Attempting to Elude a Police Officer — Possession of a Deadly Weapon on School Grounds**

In an issue of first impression, a division of the court of appeals holds that driving for two blocks, without accelerating, before turning into a parking lot in response to a police officer's signal to pull over does not constitute sufficient evidence to convict for vehicular eluding. In a second issue of first impression, the court determines that pulling into a school parking lot with a gun present in the vehicle in response to a police officer's directive is not sufficient evidence to prove "unlawful" conduct for purposes of section 18-12-105.5, C.R.S. 2019.

The court also considers whether a trial court plainly errs when it omits a specific intent element from a jury instruction for attempted first degree assault. It concludes that, though omission

of the element was erroneous, the jury instructions — read together — adequately informed the jury regarding the required mens rea.

Additionally, rejecting the notion that proof of attempted first degree assault necessarily establishes felony menacing, the court concludes that a defendant can stand convicted of both offenses; thus, those convictions do not merge.

Finally, the court determines that a defendant is not prejudiced when — in his or her absence — defense counsel and the prosecution stipulate that a jury may have access during deliberations to physical evidence introduced at trial.

Accordingly, the division affirms the judgement in part, vacates in part, and remands to the trial court to correct the mittimus.

COLORADO COURT OF APPEALS                                    2019COA181

Court of Appeals No. 17CA2054
El Paso County District Court No. 17CR565
Honorable William B. Bain, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cody Lee Procasky,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Freyre and Pawar, JJ., concur

Announced December 12, 2019

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1	Defendant, Cody Lee Procasky, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree assault, felony menacing, possession of a weapon on school grounds, prohibited use of a weapon, reckless endangerment, eluding a police officer, and a crime of violence sentence enhancer.  He contends that (1) the trial court plainly erred when it failed to properly instruct the jury on the mens rea for attempted first degree assault; (2) insufficient evidence supported his conviction for eluding police; (3) insufficient evidence supported his conviction for possession of a deadly weapon on school grounds; (4) his conviction for felony menacing should merge with his conviction for attempted first degree assault; and (5) the trial court violated his constitutional right to be present during all critical stages of his trial.  We affirm in part and vacate in part.

¶ 2	We address two issues of first impression: (1) whether Procasky could be convicted of vehicular eluding after driving two blocks to a school parking lot and stopping there at police officers' direction, and (2) whether Procasky could be convicted of possession of a deadly weapon on school grounds when he stopped at the school parking lot.

## I. Background

¶ 3      On January 27, 2017, Raymond Butler contacted 911 to report the driver of a black sedan who he believed had fired between three and five shots at his vehicle while driving on the interstate.

¶ 4      Butler testified that he was driving in the left lane when he observed the black sedan rapidly approaching. To allow the sedan to pass, Butler merged into the right lane behind another vehicle. He claimed that at the moment he applied his brakes, he noticed a hand emerge from the sedan and saw "a muzzle flash." He reported that he heard a series of "thuds" that he was able to identify as gunshots because he owns two guns.

¶ 5      Butler followed the sedan until two police officers arrived and engaged their lights and sirens. The sedan continued for two blocks on a two-lane residential road until it turned into a school parking lot. One of the officers testified that she believed the vehicle could have safely stopped on the side of the road at any point. The school parking lot had an upper and lower level, separated by a curb. The sedan originally proceeded toward the upper level but then drove over the curb, that dropped off approximately six-inches, to the lower level without braking. Once the car reached the lower level of

the parking lot, it stopped. Law enforcement officers ordered the driver — Procasky — out of the car at gunpoint. Procasky complied and walked toward the officers as ordered, at which point he was arrested, and his car was searched. The officers uncovered a 9mm Smith & Wesson pistol with a live round in the chamber under the front passenger seat. They also found the pistol's loaded magazine in the center console and several 9mm bullets on the ground near the driver's side door. In the trunk, the officers found two rifles and four boxes of ammunition. However, they did not find spent shell casings in the car.

¶ 6 Procasky claimed that Butler's car cut him off, and he heard another car backfire right afterward. He denied pointing or firing his pistol at Butler's vehicle. He said the guns and ammunition were in his vehicle because he had been target shooting the day before.

¶ 7 The jury found him guilty of all charges, and the court sentenced him to five years in the custody of the Department of Corrections for his attempted first degree assault conviction. The sentences for the lesser charges were to run concurrently.

## II. Deficient Jury Instruction

¶ 8     Procasky contends that the trial court plainly erred by failing to provide a specific intent element for the jury instruction on attempted first degree assault.[1]  We discern no plain error.

### A. Standard of Review

¶ 9     When a party has failed to properly preserve for appeal the issue of whether jury instructions accurately informed the jury of the governing law, we will reverse only if any error found rises to the level of plain error.  *People v. Miller*, 113 P.3d 743, 749 (Colo. 2005). Plain error is error that is substantial, obvious, and "occurs when, after reviewing the entire record, the reviewing court can say with

---

[1] We reject the People's contention that Procasky waived his challenge to the jury instructions on appeal simply because he did not object to them.  *See People v. Rediger*, 2018 CO 32, ¶ 3, 416 P.3d 893, 897 (concluding the defendant's mere acquiescence to a jury instruction does not constitute a waiver without evidence demonstrating that the defendant intentionally relinquished a known right).  In the absence of evidence that the defendant intended to relinquish a known right, we indulge every reasonable presumption against waiver.  *Id.* at ¶ 48, 416 P.3d at 903.  Here, when the court asked if the challenged instruction looked satisfactory, defense counsel stated, "it does."  The People articulate no tactical or strategic reason supporting their argument that defense counsel intended to approve erroneous instructions.  *Id.* at ¶ 44, 416 P.3d at 903.

fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011).

## B. Applicable Law

¶ 10　　We read jury instructions as a whole to determine whether, when read together, they adequately informed the jury of the governing law. *Gann v. People*, 736 P.2d 37, 39 (Colo. 1987). Thus, a court's failure to properly instruct the jury "does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law." *Miller*, 113 P.3d at 750; *Gann*, 736 P.2d at 39; *see also People v. Petschow*, 119 P.3d 495, 499 (Colo. App. 2004) ("[O]mission or erroneous description of the required mens rea does not render an instruction constitutionally deficient when the instructions taken as a whole clearly instruct the jury regarding the omitted or erroneous element.").

¶ 11　　Over three decades ago, the supreme court considered whether the trial court plainly erred by omitting the culpable mental state, an essential element of the offense, from a jury

5

instruction.  *Gann*, 736 P.2d at 38.  It held that the instruction was erroneous, but because the omitted element was prominently included in another instruction, the instructions as a whole adequately informed the jury of the mens rea.  *Id.* at 39.  Since that decision, multiple divisions of our court have also concluded that omission of an essential element in an elemental instruction is not fatal, so long as other jury instructions adequately inform the jury.  *Petschow*, 119 P.3d at 500-02; *People v. Beatty*, 80 P.3d 847, 851 (Colo. App. 2003); *People v. Johnson*, 74 P.3d 349, 353-54 (Colo. App. 2002); *People v. Caldwell*, 43 P.3d 663, 671-72 (Colo. App. 2001); *People v. Mendez*, 897 P.2d 868, 870 (Colo. App. 1995); *People v. Key*, 851 P.2d 228, 232 (Colo. App. 1992), *rev'd on other grounds*, 865 P.2d 822 (Colo. 1994).

¶ 12     In *Petschow*, a division of our court considered whether the court erred by failing to instruct the jury that attempted first degree assault required that the defendant had the specific intent to commit assault.  The court described the relevant jury instructions as follows:

> The attempt instruction required the jury to
> find that defendant "intentionally, engaged in
> conduct constituting a substantial step toward

6

> the commission of assault in the first degree." The instruction on first degree assault properly required the jury to find that defendant acted with intent to cause serious bodily injury to another person. In addition, the jury was again instructed that a substantial step is conduct that is strongly corroborative of the firmness of the actor's purpose to commit the crime.

*Petschow*, 119 P.3d at 502.

¶ 13    The division concluded that the trial court obviously erred by failing to specify that the defendant must act with the intent to cause serious bodily injury. *Id.* However, it held that "the instructions, when read and considered together with the instruction on the elements of first degree assault and the definition of a substantial step, clearly instructed the jury regarding the required mens rea." *Id.* Thus, the court concluded that the error did not affect the defendant's substantial rights and did not require reversal. *Id.*

### C.    Analysis

¶ 14    Here, the relevant jury instructions mirror those reviewed in *Petschow*. The jury instruction for attempted first degree assault required the jury to find that the defendant "with intent, engaged in conduct constituting a substantial step toward the commission of

7

assault in the first degree." Like in *Petschow*, the instruction did not state that the defendant must have acted with the specific intent to cause serious bodily injury. However, the attempt instruction referenced the jury instruction for first degree assault, which correctly described the mens rea required as "with intent to cause serious bodily injury to another . . . ." Additionally, the jury was instructed that "[a] substantial step is any conduct . . . which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

¶ 15　　We agree with the *Petschow* division. Here, the trial court's failure to provide the specific intent element in the instruction for attempted first degree assault constituted error. However, we conclude that the jury instructions in this case, when read and considered together, clearly instructed the jury regarding the required mens rea for attempted first degree assault. Accordingly, we discern no plain error.

### III.　Eluding a Police Officer

¶ 16　　Procasky argues that the prosecution produced insufficient evidence to sustain a conviction for eluding a police officer. We agree.

## A.     Standard of Review

¶ 17    We review sufficiency of the evidence claims de novo, even if raised for the first time on appeal. *McCoy v. People*, 2019 CO 44, ¶ 34, 442 P.3d 379, 388.

## B.     Applicable Law and Analysis

¶ 18    In evaluating the sufficiency of the evidence, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the defendant's guilt beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010); *People v. Randell*, 2012 COA 108, ¶ 31, 297 P.3d 989, 998. Our inquiry is guided by five well-established principles: (1) we give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence; (2) the credibility of witnesses is solely within the jury's province; (3) we may not serve as a thirteenth juror to determine the weight of the evidence; (4) a modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt; and (5) verdicts in criminal cases may not be based on guessing, speculation, or conjecture.

*People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999); *Randell*, ¶ 31, 297 P.3d at 998.

¶ 19 We conduct our inquiry through the language of the statute defining the offense of eluding a police officer. That statute provides:

> Any operator of a motor vehicle who the officer has reasonable grounds to believe has violated a state law or municipal ordinance, who has received a visual or audible signal such as a red light or a siren from a police officer driving a marked vehicle showing the same to be an official police, sheriff, or Colorado state patrol car directing the operator to bring the operator's vehicle to a stop, and who willfully increases his or her speed or extinguishes his or her lights in an attempt to elude such police officer, or willfully attempts in any other manner to elude the police officer, or does elude such police officer commits a class 2 misdemeanor traffic offense.

§ 42-4-1413, C.R.S. 2019.

¶ 20 The People urge us to apply the holding in *People v. Espinoza*, 195 P.3d 1122, 1129 (Colo. App. 2008), to conclude that Procasky attempted to elude police officers by driving two blocks before pulling over in a school parking lot. In *Espinoza*, a division of our court concluded that the defendant attempted to elude police officers when, after a police officer signaled him to stop, he drove

slowly for four blocks before stopping and fleeing on foot. *Id.* at 1129. The division focused its inquiry on whether fleeing on foot can constitute eluding under the statute. *Id.* In so doing, it concluded that the statutory language "in any other manner" is broad and includes attempts to elude on foot. *Id.*

¶ 21 However, the facts here are distinguishable. *Espinoza* did not address whether the defendant's driving four blocks before pulling over constituted eluding; it addressed his pedestrian flight. Indeed, no testimony indicated that Procasky attempted to flee on foot. More importantly, none of the testimony indicated that he increased his speed, extinguished his lights, or otherwise made an effort to escape from the officers.

¶ 22 Moreover, the pursuit occurred in a residential neighborhood, and law enforcement officers did not testify that Procasky exceeded the speed limit; thus, we can infer that Procasky maintained a lawful speed for two blocks before pulling over.

¶ 23 Nothing in the eluding statute requires immediate compliance. § 42-4-1413; *see* § 42-4-107, C.R.S. 2019 (requiring compliance with lawful orders or directions of police officers). Our court has found that evidence was sufficient to sustain an eluding conviction

11

when the defendant "drove 'in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property.'" *People v. Dutton,* 2014 COA 51, ¶ 25, 356 P.3d 871, 875 (quoting § 42-4-1401(1), C.R.S. 2019). In *Dutton,* the division found that the defendant attempted to elude officers, and an officer testified that he saw the defendant

- spin his wheels so that they threw up sand and gravel;
- accelerate rapidly;
- travel at high rates of speed that were not safe for the area;
- fail to stop at a stop sign;
- fail to slow for turns;
- slide sideways through turns;
- continue to accelerate while being pursued by a police officer with activated overhead lights; and
- swerve to avoid a pedestrian crossing the street.

*Id.* at ¶¶ 24-25, 356 P.3d at 875.

¶ 24    In *People v. Pena,* 962 P.2d 285, 288 (Colo. App. 1997), another division of our court concluded that the evidence was sufficient to establish eluding where "the police officer testified that defendant's car accelerated after the officer activated his lights and siren and that the chase then continued for another quarter of a mile."

¶ 25    Here, Procasky did not accelerate, and he drove only two blocks before turning into a school parking lot, driving over a six-inch curb, stopping, and then following the officer's directions to get out of his vehicle.  These actions do not, in our view, establish to a rational trier of fact that he attempted to elude the police officers.  Thus, we conclude that the evidence was insufficient to sustain the conviction, and it must be vacated.  *See People v. Ramirez*, 2018 COA 129, ¶ 41, ___P.3d___, ___.

### IV.    Possession of a Deadly Weapon on School Grounds

¶ 26    Procasky argues that he did not commit the felony of possessing a deadly weapon on school grounds when he drove into the school parking lot with his handgun in the car because he pulled over in response to police officers' sirens and flashing lights.  We agree.

### A.    Standard of Review

¶ 27    We "review sufficiency claims de novo, even when the defendant raises such issues for the first time on appeal and even if consideration of the issue involves a preliminary question of statutory construction."  *McCoy*, ¶ 34, 442 P.3d at 388.

13

## B. Applicable Law and Analysis

¶ 28    When interpreting a statute, we strive to "ascertain and effectuate the intent of the General Assembly." *People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.  We look first to the plain language of the statute to determine whether the language is clear and unambiguous — such that it does not require additional analysis — or susceptible of more than one reasonable interpretation, requiring us to apply other rules of statutory interpretation.  *Id.* at ¶¶ 12-13, 347 P.3d at 624-25.

¶ 29    Bearing in mind these principles, we look to the relevant statute.  It states, with certain exceptions inapplicable here, that "[a] person commits a class 6 felony if such person knowingly and unlawfully and without legal authority carries, brings, or has in such person's possession a deadly weapon . . . in or on the real estate and all improvements erected thereon of any . . . school . . . ." § 18-12-105.5(1), C.R.S. 2019.

¶ 30    Turning first to the plain language of the statute, we discern no ambiguity.  We give each term its ordinary meaning.  *Doubleday v. People*, 2016 CO 3, ¶ 19, 364 P.3d 193, 196.  Accordingly, the defendant must have "unlawfully" entered school property with a

14

deadly weapon. The term "unlawfully" means that the defendant's action was in violation of the criminal code. *See People v. McNeese*, 892 P.2d 304, 312 (Colo. 1995) (stating that a statutory requirement that a defendant "knowingly" and "unlawfully" entered a dwelling requires that the defendant knew he was acting in violation of the criminal code).

¶ 31    Thus, we must determine whether the evidence at trial was sufficient to convict Procasky of knowingly and unlawfully possessing a deadly weapon on school grounds.[2] Employing the sufficiency of the evidence analysis discussed above, we conclude that Procasky pulled into the school parking lot in response to the police officers' sirens and flashing lights. Thus, by pulling over in response to the police officers' directive, Procasky was not acting

---

[2] We need not address whether Procasky possessed a deadly weapon on school grounds "without legal authority," because the People do not argue a distinction between "unlawfully" and "without legal authority," and the statute was written in the conjunctive. *See Waneka v. Clyncke*, 134 P.3d 492, 499 (Colo. App. 2005) ("The General Assembly's use of the word 'and,' instead of 'or,' is presumed to be in the conjunctive sense unless the legislative intent is *clearly to the contrary*."), *aff'd*, 157 P.3d 1072 (Colo. 2007). Thus, because we conclude that he did not act unlawfully, it is of no consequence whether he acted "without legal authority."

unlawfully. This is especially so given that Procasky was not eluding officers when he pulled into the school parking lot rather than stopping sooner on the shoulder of the road. Accordingly, the evidence does not satisfy the elements required by the statute and his conviction must be set aside. *Ramirez*, ¶ 41, ___ P.3d at ___.

## V.    Merger

¶ 32    Procasky urges us to merge his convictions for felony menacing and attempted first degree assault because proof of attempted first degree assault necessarily establishes felony menacing. We decline to do so.

### A.    Standard of Review

¶ 33    Whether merger applies is subject to de novo review. *People v. Esparza-Treto*, 282 P.3d 471, 478 (Colo. App. 2011). Procasky did not preserve this issue for appeal because he did not object when the court entered separate convictions for felony menacing and attempted first degree assault; thus, plain error review applies. *People v. Davis*, 2015 CO 36M, ¶ 32, 352 P.3d 950, 957. Plain error is "'obvious and substantial,' and must have 'so undermined the fundamental fairness of the [proceeding] so as to cast serious doubt on the reliability of the judgment.'" *Id.* (citations omitted).

16

### B.     Applicable Law

¶ 34     The merger doctrine precludes conviction of both a greater and lesser included offense.  § 18-1-408(1)(a), C.R.S. 2019; *People v. Delci,* 109 P.3d 1035, 1037 (Colo. App. 2004).  In so doing, the doctrine protects the accused from double jeopardy, which is prohibited by the United States and Colorado Constitutions.  U.S. Const. amend. V; Colo. Const. art. II, § 18.

¶ 35     A lesser included offense is established by proof of the same or less than all of the facts required to establish the commission of the offense charged.  § 18-1-408(5)(a); *Delci,* 109 P.3d at 1038.  "Where the [G]eneral [A]ssembly proscribes conduct in different provisions of the penal code and identifies each provision with a different title, its intent to establish more than one offense is generally clear." *People v. Abiodun,* 111 P.3d 462, 465 (Colo. 2005).

¶ 36     However, we apply a "strict elements test" to determine if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense; if so, the lesser offense merges into the greater.  *See People v. Zweygardt,* 2012 COA 119, ¶ 13, 298 P.3d 1018, 1021.  "[A]n offense is a lesser included offense of another offense if the

17

elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶ 64, 390 P.3d 816, 826.

### C. Analysis

¶ 37    Our analysis requires us to compare the elements of the operative offenses — attempted first degree assault and felony menacing.

¶ 38    Attempted first degree assault requires that a defendant, with intent to cause serious bodily injury, takes a substantial step toward causing another person serious bodily injury.  § 18-2-101(1), C.R.S. 2019; § 18-3-202(1)(a), C.R.S. 2019.

¶ 39    Felony menacing, however, requires the jury to find that a defendant knowingly, by any threat or physical action, places or attempts to place another person *in fear of* serious bodily injury or death.  § 18-3-206(1)(a), C.R.S. 2019.  Thus, felony menacing directs the fact finder's attention toward the defendant's knowledge of the victim's state of mind.

¶ 40    "[T]he fact that a defendant intentionally caused or attempted to cause bodily injury to an intended victim does not necessarily

compel the conclusion that the defendant also knowingly placed the victim in fear of serious bodily injury." *People v. Truesdale*, 804 P.2d 287, 288-89 (Colo. App. 1990). Divisions of our court in *People v. Torres*, 224 P.3d 268, 276 (Colo. App. 2009), and *Truesdale*, 804 P.2d at 288-89, have concluded that felony menacing is not a lesser included offense of second degree murder or second degree assault. Those divisions reasoned that a defendant's intent to harm or kill the victim does not automatically imply that the defendant also intended to instill fear in the victim. *See Torres*, 224 P.3d at 276; *Truesdale*, 804 P.2d at 288-89. Recently, the supreme court in *Margerum v. People*, 2019 CO 100, ¶ 27, ___ P.3d ___, ___, recognized that menacing is not a lesser included offense of assault. Importantly, the supreme court affirmed a division of this court's observation that "all defendants in assault cases will not necessarily face criminal liability for menacing simply because the victim is afraid during an assault, because the proper focus is on the defendant's intent, not the victim's perception or reaction." *People v. Margerum*, 2018 COA 52, ¶ 68, ___ P.3d ___, ___, *aff'd*, 2019 CO 100, ___P.3d___, ___.

19

¶ 41　　In addition, we agree with the People that if a defendant attempted to assault the victim while the victim's back was turned or while he or she was asleep, the defendant could not have placed or attempted to place the victim in fear of bodily injury or death.

¶ 42　　In light of our case law and the evidence presented at trial, we conclude that felony menacing and attempted first degree assault do not merge.

## VI.　　Right to be Present

¶ 43　　Last, Procasky contends that the trial court violated his constitutional right to be present at his trial when it communicated with the deliberating jury while he was outside the courtroom.  We disagree.

## A.　　Standard of Review

¶ 44　　We review de novo the question of whether a trial court denied a defendant's constitutional right to be present.  *Zoll v. People*, 2018 CO 70, ¶ 15, 425 P.3d 1120, 1125.[3]  When, as here, the defendant

---

[3] We decline to conclude that a violation of a defendant's right to be present constitutes structural error, as Procasky argues.  *See Zoll v. People*, 2018 CO 70, ¶ 15, 425 P.3d 1120, 1125; *see also Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1912-13 (2017) (finding that prejudice is not presumed when the trial court violated

was not present and had no opportunity to object to his absence, we review allegations of denial of the right to be present at trial for constitutional harmless error. *Id.* at ¶ 17, 425 P.3d at 1125-26; *Luu v. People*, 841 P.2d 271, 274 (Colo. 1992). We affirm if any alleged error was harmless beyond a reasonable doubt. *Luu*, 841 P.2d at 275.

## B. Applicable Law

¶ 45 A criminal defendant has the right to be present at all critical stages of his or her prosecution. *People v. White*, 870 P.2d 424, 458 (Colo. 1994). Due process demands a defendant's presence to the extent that a fair and just hearing would be thwarted by his or her absence. *Luu*, 841 P.2d at 275. "However, due process does not require the defendant's presence when it would be useless or only slightly beneficial." *People v. Isom*, 140 P.3d 100, 104 (Colo. App. 2005).

---

the defendant's right to a public trial on claim of ineffective assistance of counsel); *Luu v. People*, 841 P.2d 271, 274 (Colo. 1992).

## C.    Analysis

¶ 46    Here, while the jury deliberated, the trial court returned to the bench in response to an issue about the jury's access to the magazine, pistol, and live rounds recovered during the search. Though Procasky was not present, his defense attorney was and explained that Procasky was downstairs with his grandfather.  The prosecutor and defense counsel stipulated that, if the jury wanted access to the physical evidence, it could view the magazine, pistol, and live rounds individually, but not all together.  Both attorneys agreed that the clerk could communicate to the jury that all exhibits would remain in the courtroom but that each could be sent back for viewing.  The record does not show whether the jurors ever requested to view the exhibits.

¶ 47    Assuming, without deciding, that Procasky had a constitutional right to be present, we conclude that the People have shown beyond a reasonable doubt that any error did not contribute to the verdict.

¶ 48    Further, it is unlikely that Procasky's presence would have resulted in a different ruling.  The jury had already viewed the requested evidence during trial and heard testimony about the

evidence. Moreover, there was no question that Procasky possessed the gun, magazine, and ammunition on the day in question; the primary issue was whether he aimed it and shot at Butler. Without the corroborating testimony provided by Butler and law enforcement officers, none of the evidence requested for viewing by the jury — standing alone — proved any of the crimes for which Procasky was convicted. Therefore, we discern no prejudice caused by Procasky's absence during this stage of the trial. Thus, any error stemming from Procasky's absence was harmless beyond a reasonable doubt.

## VII. Conclusion

¶ 49 Accordingly, the judgment is affirmed in part and vacated in part. We vacate Procasky's convictions for eluding a police officer and possession of a deadly weapon on school grounds and affirm his remaining convictions. We remand to the trial court to amend the mittimus.

JUDGE FREYRE and JUDGE PAWAR concur.