23CA1345 Peo v Cumberbatch 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1345
City and County of Denver District Court No. 20CR20010
Honorable Alex C. Myers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Cumberbatch,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Steven Cumberbatch, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder after deliberation.  We affirm.

## I.     Background

¶ 2     Evidence introduced at Cumberbatch's trial would have allowed the jury to find the following facts.

¶ 3     On December 2, 1994, the victim, Rita Desjardine, rented a room at the Broadway Plaza Motel.  Three days later, on December 5, a housekeeper saw Desjardine alive in her room with a Black man.

¶ 4     At 11 a.m. on December 6, the housekeeper knocked on Desjardine's door but received no answer.  Later, the housekeeper knocked again and after receiving no answer, she used her passkey to enter the room.  She saw a woman's feet on the bed.  The housekeeper assumed the woman was sleeping and closed the door.  The next morning, when the housekeeper and her coworker received no answer after they knocked on Desjardine's door, they again opened the door and saw a woman in the same position as the day before.  They left and reported what they had seen to their manager, who called the police.

1

¶ 5    After first responders arrived, Desjardine — who was lying on the bed on her back, naked, bloody, and partially covered with a blanket — was pronounced dead at the scene.

¶ 6    The autopsy revealed that Desjardine had sustained significant injuries: a laceration and bruising on the back of her head caused by blunt force trauma with a "hard rigid object"; bruising to the areas around her eyes and her eyelids, neck, hands, armpit areas, and lower breastbone area, all caused by blunt force trauma; petechial hemorrhaging of her eyes and eyelids; "through and through" lacerations of her lips "caused by pressure from the front of the mouth forcing the lips into and tearing along the teeth"; extensive hemorrhaging of her tongue due to it being bitten down on; scrapes to her face, neck, and hands; and hemorrhaging of her genital area. Desjardine also had fluid in her lungs and an enlarged liver. The medical examiner concluded that the cause of Desjardine's death was asphyxiation by smothering, and the manner of her death was homicide.

¶ 7    During the initial investigation in 1994, five people were named as possible suspects but were ultimately excluded.

¶ 8     The case remained unsolved until, in 2018, the cold case unit identified Cumberbatch as a possible suspect.[1]  Subsequent reprocessing of some of the evidence in the case linked Cumberbatch to the crime scene.  Specifically, his DNA was found on a detached table leg next to the bed; on a metal brace for the detached table leg; in hairs discovered on Desjardine's body; on a pair of shorts next to the bed; on a gin bottle in the room; in Desjardine's oral, vaginal, and anal swabs; and in Desjardine's fingernail scrapings.  The DNA evidence also eliminated the five original potential suspects from further investigation.  Additionally, Cumberbatch's fingerprints and palmprint were found on the metal brace and on the bedsheet on which Desjardine's body was found.

¶ 9     The prosecution charged Cumberbatch with first degree murder after deliberation and first degree felony murder predicated on sexual assault.

---

[1] The jury only heard that the cold case unit "received some new investigative information stating that Mr. Cumberbatch was a possible suspect in this case."  However, during a pretrial hearing, testimony established that in 2018, the unit was notified when DNA from this case matched with Cumberbatch's DNA from the Combined DNA Index System (CODIS) database.  At the time, Cumberbatch was serving a sentence for a felony conviction in Virginia.

¶ 10 Cumberbatch asserted an alternate suspect theory at trial and argued that the forensic evidence was explained by the fact that he and Desjardine had consensual sex. He maintained, however, that he did not kill her.

¶ 11 The jury acquitted Cumberbatch of felony murder but convicted him of first degree murder after deliberation. The trial court sentenced him to life in prison without parole, to be served consecutively to the sentence he was serving in Virginia.

## II. Analysis

¶ 12 Cumberbatch contends that (1) there was insufficient evidence that he acted with the required intent for first degree murder; (2) the trial court erred by rejecting his tendered implicit bias jury instruction; and (3) the cumulative effect of these errors requires reversal. We address each contention in turn.

## A. Sufficiency of the Evidence

¶ 13 Cumberbatch first argues that there was insufficient evidence to allow the jury to conclude that he acted after deliberation and with intent. We disagree.

## 1. Standard of Review

¶ 14 "In a criminal case, the prosecution must prove every element of the charged offense beyond a reasonable doubt." *People v. Vidauri*, 2021 CO 25, ¶ 10. In reviewing challenges to the sufficiency of the evidence, we review the record de novo to determine whether the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, supports a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt. *McCoy v. People*, 2019 CO 44, ¶ 63. "[V]erdicts in criminal cases may not be based on guessing, speculation, or conjecture." *People v. Procasky*, 2019 COA 181, ¶ 18. However, we "may not serve as a thirteenth juror and consider whether [we] might have reached a different conclusion than the jury." *People v. Harrison*, 2020 CO 57, ¶ 33. Thus, we will disturb the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is insubstantial and insufficient to support a guilty verdict beyond a reasonable doubt. *See Thomas v. People*, 2021 CO 84, ¶ 10.

## 2. Applicable Law

¶ 15  In relevant part, the first degree murder statute provides, "A person commits the crime of murder in the first degree if[,] . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person." § 18-3-102(1)(a), C.R.S. 2025.

¶ 16  "A person acts 'intentionally' or 'with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense." § 18-1-501(5), C.R.S. 2025.

¶ 17  "The term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." § 18-3-101(3), C.R.S. 2025. "An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." *Id.* "The length of time required for deliberation, however, is not long." *People v. Sanchez*, 253 P.3d 1260, 1262 (Colo. App. 2010).

¶ 18  Deliberation and intent can often only be proved through circumstantial or indirect evidence. *People v. Johnson*, 2024 CO 32, ¶ 36; *People v. Dist. Ct.*, 926 P.2d 567, 571 (Colo. 1996). Intent may

6

be inferred from the defendant's conduct, *People v. Tucker*, 232 P.3d 194, 201 (Colo. App. 2009), or the fact that the defendant actually completed the prohibited act, *Johnson*, ¶ 36. And "[t]he circumstances surrounding a victim's death may permit the reasonable inference that the defendant had adequate time for the exercise of reflection and judgment concerning the fatal act." *Dist. Ct.*, 926 P.2d at 571.

### 3. The Evidence Was Sufficient to Establish Cumberbatch Acted with Intent and After Deliberation

¶ 19    The circumstantial evidence presented here was sufficient to establish that Cumberbatch acted with intent and after deliberation. The jury heard evidence that Desjardine sustained significant injuries to her head, face, mouth, neck, chest, and hands from blunt force trauma and smothering. *See People v. Bartowsheski*, 661 P.2d 235, 242 (Colo. 1983) (The "nature and number" of the victim's wounds permitted the inference that the attack "continued even after she had been rendered helpless," thereby establishing deliberation for first degree murder.). The medical examiner testified that the cause of Desjardine's death was asphyxia by smothering due to the application of force sufficient to

cause the severe injuries to her mouth, lips, and tongue, as well as the fluid in her lungs and petechiae in her eyes.  The large amount of blood from the head lacerations and the petechiae in her eyes both occurred before her death while she was being beaten and smothered.  The medical examiner also said that, if Desjardine had been struggling, it would have taken "increasingly greater amounts of force in order to accomplish" the asphyxia by smothering.  *See People v. Solomon*, 234 P.3d 501, 519 (Cal. 2010) ("From [the] manner of [binding and asphyxiating the victims], the jury reasonably could infer that [the] defendant had time to consider the murderous nature of his actions.").  Moreover, the prohibited act was completed.  *See Johnson*, ¶ 36.  Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could have reasonably found that Cumberbatch carried out a prolonged and highly forceful physical assault with the intent to kill Desjardine and that, by the nature of her death, Cumberbatch acted after exercising reflection and judgment.

¶ 20     Cumberbatch argues that the evidence was nevertheless insufficient to show intent and deliberation because there was no evidence that he (1) had animosity toward Desjardine; (2) had a

8

motive to kill her; (3) threatened or menaced her; or (4) had a relationship with or knew her before the killing. But while additional proof of deliberation and intent can take these forms, none of these things are required to prove first degree murder. *See People v. Madson*, 638 P.2d 18, 26 (Colo. 1981) ("Additional proof [of deliberation] *may* take the form of enmity, hostility, jealousy, or other manifestations of ill will between the accused and the victim." (emphasis added)); *People v. Oliver*, 2020 COA 150, ¶ 12 ("[P]roof of motive[, including animosity,] is not necessary to prove the commission of a crime."); § 18-3-102(1)(a) (requiring only the death of "a person other than" the defendant, without regard to the relationship between the defendant and the victim, for first degree murder). The prosecution did not need to prove that Cumberbatch knew Desjardine or threatened her before intentionally and deliberately killing her. Nor did they have to prove why Cumberbatch intentionally and deliberately killed her. They only had to prove that he did. *See Oliver*, ¶ 12. Even without evidence of a motive, animosity, threats, or a relationship, for the reasons above, a reasonable juror could examine the circumstances

9

surrounding Desjardine's death and infer that Cumberbatch acted with intent and after deliberation. *See id.*

¶ 21 Cumberbatch also asserts that the evidence was insufficient to establish deliberation because there was "no evidence that the instrument that caused the blunt force trauma was not obtained hastily." But this argument is unavailing because the blunt force trauma is not what caused Desjardine's death: the asphyxiation by smothering did. And there is sufficient evidence from which the jurors could conclude that even if he had obtained the instrument that caused the blunt force trauma hastily, he had time to act with intent and deliberation before he completed the asphyxiation that resulted in her death.

¶ 22 We therefore conclude that sufficient evidence supports the first degree murder conviction.

### B.    Implicit Bias Instruction

¶ 23 Cumberbatch next contends that the trial court erred by rejecting his tendered implicit bias jury instruction. Again, we disagree.

## 1.    Additional Facts

¶ 24    Defense counsel tendered an implicit bias jury instruction, arguing that "race is an issue in this case and there's a concern about implicit bias" because Cumberbatch is a "[B]lack male" and Desjardine was a "white woman."  The proposed instruction read as follows:

> The prosecution has charged Mr. Cumberbatch, an African American man, with a crime involving violence.  One of the unfortunate truths about our great country is that many of us make unfair judgments about others, especially people who do not share our race or ethnicity.  In this case, there is a risk that you will assess the evidence offered in this case and make your decision based on widely believed but untrue stereotypes about Black men and criminal or violent conduct.  It would violate the core principles of our justice system to allow these stereotypes to impact you.  I implore you to resist any urge to reach a verdict that is influenced by bias for or against any party or witness and to make your decision based solely on the evidence presented.

¶ 25    The prosecutor objected to the instruction, asserting that implicit bias was not a "huge point of contention" because the case was solved forensically, and the jurors would already be instructed to not allow bias or prejudice to influence their decision.

11

¶ 26    The trial court rejected Cumberbatch's instruction.  It reasoned that (1) the Colorado Model Criminal Jury Instructions (COLJI-Crim.) did not include an implicit bias instruction; (2) COLJI-Crim. was comprehensive, "leaving little room for additional instructions"; and (3) it would be duplicative since the jurors would already be instructed to "not be influenced by sympathy, bias, or prejudice in reaching their decisions."

¶ 27    While the trial court declined to give Cumberbatch's implicit bias instruction, it did give the standard instruction regarding bias:

> During the trial, you received all of the evidence that you may properly consider in deciding the case.  Your decision must be made by applying the rules of law that I give you to the evidence presented at trial.  Remember, you must not be influenced by sympathy, bias[,] or prejudice in reaching your decision.
>
> You should not allow bias or any kind of prejudice based upon gender to influence your decision.

COLJI-Crim. E:01 (2022).

¶ 28    Eight months after Cumberbatch was convicted, the Colorado Supreme Court Model Criminal Jury Instructions Committee published the 2023 COLJI-Crim., which added language regarding

12

implicit bias to its instruction for "Introductory Remarks, Juror

Qualifications, and Jury Selection":

> You must also not be biased for or against the
> defendant, any witness, or any other party
> based on any identifying characteristic such as
> race, religion, age, gender, gender identity,
> gender expression, sexual orientation,
> ethnicity, national origin, disability,
> socioeconomic status, or any other such
> characteristic.  And you must guard against
> unconscious bias (also called implicit bias).
> Unconscious biases are stereotypes,
> perceptions, attitudes, or preferences that
> people may hold without being aware of them.
> Such biases can affect how we evaluate
> information and make decisions.  You must
> not allow unconscious bias to influence your
> verdict.

COLJI-Crim. B:01 (2023).

### 2.  Standard of Review

"We review jury instructions de novo, as a whole, to determine

whether they accurately informed the jury of the governing law."

*People v. Toro-Ospina*, 2023 COA 45, ¶ 41.  But we review a trial

court's decision whether to give a particular instruction for an

abuse of discretion.  *Id.*  A court abuses its discretion when its

ruling is manifestly arbitrary, unreasonable, or unfair, or if it

13

misconstrues or misapplies the law. *People v. Quillen*, 2023 COA 22M, ¶ 14.

### 3. The Court Did Not Abuse Its Discretion by Rejecting the Instruction

¶ 30 Cumberbatch argues that his tendered implicit bias jury instruction was necessary because "[i]t is indisputable that our country has a long and tragic history of racism, and the 'fear' of Black men perpetuating sexual assault against white women is embedded in that history." We recognize this point and the "tragic history of punishing [B]lack men for sexual crimes against white women much more severely than white men who committed the same crimes." *People v. Robinson*, 2017 COA 128M, ¶ 24, *rev'd*. Nonetheless, under these facts, we conclude that the trial court did not abuse its discretion by rejecting Cumberbatch's instruction.

¶ 31 In *Toro-Ospina*, a division of this court addressed a pre-2023 implicit bias instruction. There, the defendant tendered an implicit bias instruction due to concerns about bias against him for not being a native English speaker and for needing an interpreter. *Toro-Ospina*, ¶ 39. The proposed instruction read: "Unconscious biases are stereotypes, attitudes, or preferences that people may

14

consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions." *Id.* at ¶ 42. The division determined that it was within the trial court's discretion to choose whether to provide the instruction because neither the General Assembly nor the Colorado Supreme Court had required an instruction containing that language. *Id.* at ¶¶ 46-47.

¶ 32    Despite Cumberbatch's urgings to the contrary, we agree with the division's reasoning in *Toro-Ospina* and follow it here. In this case, the trial court also did not abuse its discretion by rejecting the tendered implicit bias instruction because no statute or case law required one at the time. *See id.* at ¶ 47. Under these circumstances, the court's decision to reject an instruction it was not required to give "fell within a range of reasonable options." *Id.* (quoting *Vigil v. People*, 2019 CO 105, ¶ 14). And the supreme court did not add the new implicit bias instruction to COLJI-Crim. until well after Cumberbatch was convicted. Accordingly, the trial court's instructions, as a whole, accurately informed the jury of the governing law. *Id.* at ¶ 41.

¶ 33    Moreover, though the trial court did not give Cumberbatch's tendered instruction, it did instruct the jurors not to allow bias or prejudice to affect their decisions. And "we must presume that the jury followed all of the court's instructions." *Johnson v. People*, 2019 CO 17, ¶ 16.[2]

¶ 34    For these reasons, we conclude that the trial court did not abuse its discretion by rejecting Cumberbatch's tendered implicit bias instruction.

## C.    Cumulative Error

¶ 35    Finally, Cumberbatch contends that cumulative error warrants reversal.

---

[2] Though the trial court did not indicate it was rejecting Cumberbatch's tendered instruction based on its content, the tendered instruction contained problematic language not present in the 2023 COLJI-Crim. instructions or *Toro-Ospina*. Cumberbatch's proposed instruction included language that was argumentative ("One of the unfortunate truths about our great country is that many of us make unfair judgments about others, especially people who do not share our race or ethnicity."), inflammatory ("It would violate the core principles of our justice system to allow these stereotypes to impact you."), and assumptive ("[T]here is a risk that you will assess the evidence offered in this case and make your decision based on widely believed but untrue stereotypes . . . ."). And it suggested that the trial court was requesting a personal favor by telling the jury, "I implore you to resist any urge . . . ." These points bolster our conclusion that the court did not abuse its discretion.

¶ 36 "The doctrine of cumulative error is based on the notion that multiple errors, in isolation, may be viewed as harmless, but the synergistic effect of the multiple errors may be so prejudicial that they deprive a defendant of a fair trial." *People v. Serna-Lopez*, 2023 COA 21, ¶ 47. "Stated simply, cumulative error involves cumulative prejudice." *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Therefore, we must conduct a cumulative error analysis only when we have identified multiple errors. *See id.*

¶ 37 Because we have not identified any errors, we reject Cumberbatch's cumulative error claim.

## III. Disposition

¶ 38 The judgment of conviction is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.